UNITED STATES DISTRICT COURT **RECEIVED**
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL 25 2008
~~JuL 25 2008~~
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Davenport, Louise
   Plaintiff,

                                  No.

    V.
Defendants -
Social Security Administration             08cv4246
Michael Astrue, Commissioner,             JUDGE MANNING
Cynthia Bretthauer, ALJ, Edwin Shinitzky, ALJ   MAG. JUDGE COLE
Paul C. Lillos, Regional CALJ
Each in his/her Official and Individual Capacities
Illinois Department of Disability Determination Services
Services as agent of SSA - Joan Fafoglia,
Thomas Bonner, Rose Angelo, Dr. Scot Kale,
Dr. E.C. Bone, Dr. Carlos F. Aquino, Officially and Individually
Appeals Council (unknown members), Officially and Individually
Patrick P. O'Carroll Jr., Office of Inspector General,
Officially and Individually
~~Loop Mortgage Corp, Dave Fleischman, President~~

**Introduction**

This is a Bivens Action pursuant to 28 U.S.C. 1331, against a number of Social Security Administration (SSA) employees who conspired with my ID thieves, property tax buyers State Title/Loop Mortgage Corporation (LMC), to intentionally disregard my rights to Due Process under the Fifth Amendment and Equal Protection under the law pursuant to the Fourteenth Amendment of the U.S. Constitution.

**Background**

Since May 1997, there has been a "real estate scam" as a form of Identity theft being perpetrated using mine and my mother's (Annie Mae Davenport ) names. This ID theft is different from the common type in that the perpetrators, tax buyers from State Title/LMC, knew that we had not filed our ownership claims to property where we lived at 2565 W. Washington Chicago, IL 60612 - 16-12-423-006. This house was one of 10 parcels to which we were entitled through Unknown Ownership from a housing court case- 85-MI-404062 in which we, the Tenants, were summoned after the landlord repeatedly failed to appear. My mother appeared and subsequently corrected the violations. The judge then told her to pay the property tax bills and water bills, which at the time where behind. She paid them. We also had Adverse

1

Possession claims pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-109. Since nine of the parcels were in a Land trust U/T/D Doc #20711347, this made it easier for the perpetrators to claim the property on our behalf. While at the same time threatening, harassing and intimidating us to prevent us from filing our own claims. They also corrupted the lawyers we tried to hire so that the lawyers would not file our claims in court. Although my mother was, according to 735 ILCS 5/13 -109 Adverse Possession with seven years payment of taxes, the legal owner of the property, and recognized as the "owner of record" by the City of Chicago, we were evicted from the property after almost 27 years in December 1998. There are more details on this real estate scam In the attached ID theft affidavit (Exhibit A).

Since then, these ID thieves have taken everything we've had. They've also tried to control every aspect of our lives. This includes where we live - they (1) forced us to stay in "rooms" in an apartment, and (2) forced me to be homeless (Exhibit B). They also try to control with whom I form a relationship - they keep trying to intimidate me into getting into a relationship with men they choose. They even try to control what I wear. Though for the purposes of this complaint, the focus is their influence on the processing of my disability claims. Where, pursuant to 42 U.S.C.1985 (2) and (3), they have conspired with Social Security Administration employees to delay the processing of my Social Security Disability (SSDI) and Supplemental Security Income (SSI) Claims.

## Complaint

1. SSA employees have intentionally ignored their own laws and regulations at the request of my ID thieves, and in doing so have violated, on numerous occasions, my rights to a full and fair hearing pursuant to the Fifth Amendment's guarantee of Due Process and my Fourteenth Amendment right of equal protection under the law or my right to be treated as other similarly-situated disability claimants.

2. Although I am a Black/African-American female, the discrimination in the processing of my disability claims is not directly because of race or gender. It is because of the influence of my ID thieves. I, therefore, am proceeding "as a class of one;" since unlike other similarly-situated disability claimants, my claims have been hindered continuously by the acquiescence of SSA employees to the wishes of my ID and property thieves to delay my claim.

3. The SSA has no rational basis in law to intentionally impede the processing of my claims. As has been the method of operation with my ID thieves for years, they usually pay whomever they must to get what they want. I, therefore, believe this is the reason SSA employees did not do their jobs as it relates to my disability claims.

2

2 of 66

4. Although delays in processing Social Security Disability claims are typical , causing most claims to be decided upwards of three years after initial applications have been filed, my claims have taken more than twice this long. It has now been almost seven years since I filed my initial applications in July 2001.

5. This intentional and obvious disregard of my Due Process and Equal Protection rights by SSA employees can be seen in the following summary of the steps in the SSA's Disability administrative claim process which I've followed, and how they were handled. Also listed are the agency's own laws, rules or regulations which state how each particular situation should be handled. I also included a description of the additional measures, i.e. writing letters, filing complaints, I took to try to resolve as many of these problems as possible.

**Initial Determination**

6. I filed Initial Applications for SSI and SSDI on or about July 24, 2001. At this time, all I had was a "collection of symptoms," difficulty breathing, chest pain, back pain, leg and arm pain, fatigue, headache, dizziness, nausea, insomnia and stiffness (R. 78). The doctors would not tell me what was wrong with me. I even wrote to the adjudicator telling him that I was looking forward to an examination by an agency doctor so that I could finally have a diagnosis for my symptoms (R. 134).

7. It took about 4 1/2 months from application to decision. I did not notice this problem until the federal court case in 2004, but the initial determination by adjudicator Thomas Bonner and Dr. E.C .Bone listed the primary diagnosis as "History of Low Backache." I did not claim to have a back disorder. It listed "None" for the Secondary Diagnosis (R. 71). There was no mention of any of my symptoms on this form.

8. In October 2001, I attended a consultative examination (CE) with Dr. Scott Kale, an arthritis expert, arranged by the Illinois Department of Disability Determination Services (DDS). Although I spent 30-40 minutes in the examining room alone, when he came in, he spent approximately five minutes in the room with me.

9. He asked several questions, told me to do two exercises, and he listened to my heart for about five seconds. He then said that he would send a "favorable letter to the DDS." However, I asked him what he thought I had. He said he did not know; I need more tests. I did not know what the report from Dr. Kale contained.

10. On the same day, even though I did not claim to have a mental impairment, Dr Nelson performed a Psychiatric CE (R. 248-51). He spent about 20 minutes in the room with me although his report says he spent 40 minutes with me. He asked me if I thought I was suffering from Clinical Depression, I said, "I

don't think so." I didn't know what he meant by "clinical depression" and he didn't' tell me. I found-out later that this was evidence to him that I am depressed; that I didn't deny it.

11. This doctor wound-up diagnosing me with Adjustment Disorder. He also listed insomnia, which was probably a result of stress, and the lack of appetite, most likely from the undiagnosed Congestive Heart Failure (CHF) as symptoms of depression. He did not give five symptoms that is supposed to be used as the diagnosing criteria for depression according to the DSM IV, Diagnostic and Statistical Manual of Mental Disorders IV.

12. A Residual Functional Capacity (RFC, R. 217-24) assessment was done, but it was based mainly on the CE reports from Dr. Kale and Dr Nelson. The state doctors who supposedly reviewed the medical evidence and compiled the RFCs, ignored progress notes from my treating sources and the answers I gave in the daily living questionnaires with details from me about my symptoms; and used only the CE reports as the basis for their statements. Contrary to both Social Security Ruling (SSR) 96-8p and SSR 95-5P, which say, in all cases in which pain is alleged, the RFC must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.

13. Additionally, in the RFC, one of the state doctors said that my shortness of breath (SOB) has "no cardiac basis" (R. 222) even though there were several notations of a prior history of "HTN" (Hypertension aka High Blood Pressure, R. 182) and "CAD" (Coronary Artery Disease, R. 182) and a diagnosis of Angina in progress notes from treating physicians. Contrary to SSR 96-8p, under EVIDENCE CONSIDERED, the RFC assessment must be based on all of the relevant evidence in the case record, including -

Medical history,
Medical signs and laboratory findings,
The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication),
Reports of daily activities,
Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.

14. According to Todd A. Duclos, Special Assistant United States Attorney (S.A.U.S.A.), Defendants Memorandum in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Remand, June 17, 2004 (03-CV-9301NDIL)

Footnote 3: "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 CFR 404.1527 (f)(2)(i) Soc. Sec. Ruling 96-6p.

So according to this, these "state medical consultants" knew or should have known to consider other evidence besides the information from Dr. Kale and Dr. Nelson.

4

**Reconsideration**

15. Of course the initial determination was unfavorable, I therefore, filed for Reconsideration, which took four and a half months from application to decision. I was confused as to why my claims were denied if indeed Dr. Kale told the "State" what he told me - that I needed more tests. I figured what Dr. Kale reported would be in my claim file. I requested access to the claim file several times, but was prevented from seeing it by SSA employees (Exhibit C).

16. I sent at least five complaints regarding problems with SSA employees to the Office of Inspector General (OIG). Although I had most of these letters in my Electronic Mail (Email) account, the most recent ones have been inexplicably deleted.

17. I sent the first complaint regarding lack of access to my claim file to the OIG in February 2002 (Exhibit D). I received no acknowledgement of/or reply to my complaint and I still could not see my claim file.

18. Additionally, I discussed being denied access to my claim file in a letter I sent to Regional Commissioner James Martin. This letter is not in my claim file but I did receive a reply in which he said that I would be allowed access to my claim file. And I was allowed to see it right before the 2002 Administrative Law Judge (ALJ) Hearing.

19. Furthermore, I asked for damages in an Amendment to my first case, 03-CV-9301 NDIL, in federal court because of it (Exhibit E). Yet, this problem continued to some degree throughout each level of my appeals. The SSA employees prevented my access to my claim file so that I could not properly prepare for my appeals, and so that I would not see the report from Dr. Kale, in violation of the Fifth Amendment's Due Process Clause, the U.S. Privacy Act of 1974 (5 USC 522.) and Hearing, Appeals, Litigation and Law Manual (HALLEX) 1-2-1-35(B)(2) which says....the claimant or his representative has the right to examine all materials in the claim file, not just the material the hearing office staff has selected as "proposed exhibits."

20. The Determination Transmittal for the Reconsideration was signed by Rose Angelo DDS Disability Examiner and Carlos F. Aquino MD, 2152. They listed "Back Disorder" as the "primary diagnosis" and gave no "secondary diagnosis" (R. 73).They also ignored my symptoms or did not attempt to "label what could be causing my "collection of symptoms" (R. 78).

5

21. In the letter denying my request for reconsideration, it said that I submitted "no new evidence" with my reconsideration request (R. 257-260). Not true. Actually, I submitted a number of pages of evidence including more completed SSA questionnaires about how my conditions affect me, specifically the Reconsideration Disability Report (R. 145-52), dated January 8, 2002, where I said about my impairments -

P. 145 - The pain in my legs is worse.
P.146 - Since November (2001) I have been falling asleep as soon as my head hits the pillow. However, I've been waking up in the middle of the night because I become short of breath.
    I also don't sleep through the night because I have to go to the bathroom every two hours.
    My legs and ankles have started to swell again. This happened before in early 2001. The doctor and I thought it was from the medication (Hydrochlorithiazide, a diuretic). I am not sure what is causing it now since I'm not taking any medication.
    In mid-December (2001), I noticed even though I was wearing three pairs of socks, my feet were still cold. The rest of me was warm. I tried moving them but they just felt numb.

I wasn't keeping track of the documents I sent to the SSA before this. I started doing it once I saw that my evidence was being ignored.


**Pre Hearing - 1**


22. In September 2002, about eleven months after it took place, and about ten days before the first ALJ Hearing, I was finally allowed access to my claim file. It was at this point I saw the fictitious report of the CE from Dr. Kale (R. 252-55).


23. I immediately wrote a letter to ALJ Cynthia Bretthauer telling her that the report of the CE was false (R. at 158-9). That Dr. Scot Kale did not perform the tests on me for which he reported results. This letter is in the claim file, but it was apparently ignored along with other correspondence I sent regarding this bogus CE. Although according to HALLEX I-1-3-1. Criminal Violations of the Social Security Act and Other Federal Statutes, this bogus CE constitutes Fraud. Specifically, B7 is applicable in my case where it says The following violations are subject to criminal prosecution for fraud:
7. Making or causing to be made a false statement or representation of a material fact for use in determining rights to Social Security benefits, Medicare, or Supplemental Security Income;

24. Additionally, Program Operations Manual Service (POMS) DI 23035.005 states that fraud exists when a person either:
Makes or causes to be made, with intent to defraud, a false statement or misrepresentation of a material fact for use in determining rights to Social Security benefits; or
With intent to defraud, conceals or fails to disclose a material fact for use in determining rights to Social Security benefits.

25. Of course, Dr. Kale knew he didn't examine me or perform the many tests for which he reported results. The SSA employees who prevented my seeing my claim file also knew it; that's why they denied

my access to my file. so I wouldn't see his report. Of course, my seeing the report didn't mean anything. I complained to other SSA employees immediately after
I saw the report, but my complaints were ignored.

26. And how much weight was this misrepresentation of this CE given? Well, the ALJ relied on it almost exclusively in her decision; the state doctors compiled an RFC based mainly on it; and the magistrate judge in federal court quoted this CE report extensively. This despite my constant protests that this doctor never performed these tests on me.

27. Actually, I do not know why my ID thieves do not want my Disability claims approved. I just know that right after I filed my applications, people started encouraging me to get a job, when previously my ID thieves had been preventing my getting a job. It may have something to do with the small business I supposedly had at one point.

28. I soon filed a complaint against Dr. Kale with the Illinois Department of Professional Regulations (IDPR). My copy of the complaint was stolen, so the only proof I have that I filed this complaint is the Email messages I sent to the investigator, Al Tracy, regarding the trouble I had trying to talk to him about this complaint (Exhibit F). I never did talk to him directly.

29. Additionally, I sent a copy of the complaint I filed to the regional commissioner of SSA, James Martin along with my letter (R. 62-3) and to the Deputy Director of the Illinois Department of Disability Determination Services (DDS), Joan Fafoglia. I never received a reply from her nor anyone from that agency, even though according to POMS DI 23025.025 C2(a) The DDS adjudicative team has authority to make FSF (Fraud or Similar Fault) findings; and (b) The DDS may disregard evidence based on FSF committed by either a claimant or a third party.

30. I did receive a letter from the SSA's regional commissioner James Martin, which has since been stolen. It said there was supposed to be some type of investigation done regarding this CE. If an investigation, did take place, I never learned the results. Not only is there nothing in my claim file regarding this "investigation," there's nothing in my file regarding my complaint against Dr. Kale.

**ALJ Hearing - 1**

31. I had an unfair hearing in October 2002 because the ALJ was biased.

7

32. First, my hearing should not have been in the Evanston . Illinois office. I applied for disability using an address on the west side of Chicago, 3327 W. Monroe Street and my case during the initial Determination and reconsideration were handled by the office most convenient to me -1233 W. Adams.

33. For the ALJ Hearing, I was given several reasons why my case was moved to the office that handles cases for the north side, the Evanston OHA. One of those reasons is because my case was given to ALJ Bretthauer and that is where she is. This despite the fact that I complained that this office is inconvenient for me. According to HALLEX I-2-3-10 E2(f ) Although not a reason in and of itself to change the location of the hearing, living closer to another hearing location, is a valid objection to the place of hearing.

34. During the hearing, when I told ALJ Bretthauer that the CE doctor only spent five minutes in the room with me, she ignored me. She did not question me at all about what I was saying about the CE with Dr. Kale (Tr. 268-9). This in violation of HALLEX 1-2-6-56, which says, The regulations provide that the ALJ shall look fully into the issues, question the claimant and other witnesses and, accept as evidence any documents that are material to the issues.

35. ALJ Bretthauer told me during the hearing in October 2002 on several occasions that I did not have the conditions I claimed, particularly Angina and Rheumatoid Arthritis, (RA, Tr. 294). Instead she said my symptoms of shortness of breath (SOB) were caused by anxiety and my chest pain was caused by Sarcoidosis; conditions I don't claim to have.

36. Before the hearing, I requested the presence of a medical expert. During the hearing, the ALJ said she did not feel it was necessary. However, this led to a debate over what a Rheumatoid Factor is and specifically what RF>20 means (Tr. at 294). I told her it was a positive reading for RA. She said it's not. Even though I brought copies from medical references explaining Rheumatoid Factor (Pl. Complaint Exhibit 4C & 5C), the medical expert would have been helpful. According to HALLEX I-2-5-34. B. The ALJ must obtain an Medical Expert's opinion, either in testimony at a hearing or in responses to written interrogatories:

To evaluate and interpret background medical test data.

When the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing.

Both of these were applicable to my case.

37. During the hearing, the ALJ told me that instead of RA, my symptoms of painand morning stiffness were probably caused by Fibromyalgia (Tr. 294). Although I've seen at least 30 doctors since the hearing, none have mentioned Fibromyalgia.

8

38. She also used Listing 1.04 for Vertobrogenic Disorders for low back pain at Step 3 of the Sequential Evaluation Process. I only claimed to have back pain in conjunction with my other symptoms (R. 78), chest pain, morning stiffness, SOB, etc., which were ignored in the RFC. I tried to argue that I equalled the listing of 1.02 - Dysfunction of a weight-bearing joint because of the RA in my knees and hips, but again, what I said was ignored.

39. The ALJ never ordered additional RFCs. The only one used was based on the bogus report of the CE by Dr. Scot Kale (R. 217-24). This despite what is stated in SSR 96-8p, RFC is assessed by adjudicators at each level of the administrative review process based on all the relevant evidence in the case record, including information about the individual's symptoms...

40. According to HALLEX I-4-3-43. B (20) Special Procedures for Critical Cases, ALJ Bretthauer should have designated my case as a "Dire Need/Critical Situation." She was well aware that I am homeless, and have been since January 2002. During the October 2002 hearing, she questioned me as to why I lived in a car instead of going to a shelter (Tr. 272).

41. This would have been for the benefit of my ID thieves if I'd taken her advice and gone to shelter. With this designation, my case should have been expedited, but it wasn't. I've been homeless - living on the streets, with no income - for more than six years. This despite the service the SSA claims to give to the homeless on it's website (Exhibit G).

**Post ALJ Hearing - 1**

42. I called the SSA's 800 number immediately after the hearing to file a complaint against ALJ Bretthauer with the Office of Inspector General. I was told by a male that I could not be sure that the judge would rule against me and he told me to wait until I received her decision to file a complaint. I said OK.

43. I couldn't wait for the decision though and I wrote a letter to the Chief Administrative Law Judge (CALJ) complaining of the behavior of the ALJ during the hearing. I eventually sent three letters to the CALJ, two of which are in my claim file (R. 48-53, 54-58). However, the first letter is not in the file. It detailed the specific problems I had with this ALJ during the hearing and the possible connection to my Identity theft/real estate scam.

44. In reply, I received a letter from the Deputy CALJ, which was also in a bag that was stolen (See Exhibit J. In it she told me to proceed with my appeals, which have a "built-in complaint system." She said I could make the ALJ's behavior the subject of the appeals. Well, I did that, but you can't tell that by looking in the claim file.

45. The ALJ based her written decision solely on the report of the consultative examination done by Dr. Scot Kale even though I told her in writing before the hearing (R. 59-60) and in my testimony during the hearing (Tr. 268-9) that this doctor only spent five minutes in the room with me, and he did not perform most of the tests for which he reported results.

46. She ignored other evidence, including my statements in SSA disability questionnaires (R. 105-14, 127-33, 145-52 & 155-7) and the testimony I gave during the hearing about how my impairments affect me (Tr. 275-89). According to HALLEX 1-2-6-58, Only evidence that is material to the determination of the issues before the ALJ shall be admitted. Evidence is (b) anything you or anyone else submits to us or that we obtain that relates to your claim. This includes...
 (3) Statements you or others make about your impairments, your restrictions, your daily activities...or any other relevant statements you make to medical sources during the course of exam or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings.

47. In her decision, although she did not say how, ALJ Bretthauer said "the claimant appeared paranoid or suffering from a mental disorder" (ALJ Discussion page 5). Again, for the benefit of my ID thieves. Apparently this was one of the additions that was made after the first decision was stolen.

48. Also, in the decision, the ALJ claimed I was not credible during the hearing (ALJ Findings #5), but she did not say on what exactly she based this conclusion. According to SSR 96-7. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

49. It took four and a half months for me to receive the ALJ's decision in this case. Even though I knew the ALJ would rule against me during the hearing. This is also contrary to their regulations -The ALJ will issue the initial decision to all parties within 60 days after the time for submission of post-hearing briefs or reply briefs, if permitted, has expired.... If the ALJ cannot issue an initial decision within the 60 days, the ALJ will notify the parties of the reason for the delay and will set a new deadline 20 CFR §498.220(C). This wasn't done in my case.

50. The Fraudulent CE stopped being the main subject of my complaints and now the main focus was the biased ALJ hearing.

**Appeals Council**

10 of 66

51. I was now having more obvious interference from the ID thieves. They had now started stealing my bags to get my documents so I that I would not have proof for my arguments in my appeals.

52. I did what the Deputy CALJ suggested and made ALJ bias during the hearing the subject of my subsequent appeals. The letter I sent to the SSA is in the file (R. 256), but the form I used is not; SSA Form HA-520-U5 (5-2003) REQUEST FOR REVIEW OF HEARING DECISION/ORDER  #5. I request that the Appeals Council review the Administrative LawJudge's action on the above claim because: The hearing I had was unfair because the ALJ was biased against me.
I gave something similar to this as the reason for the review request.

53. Apparently this form is missing because if was proof that I complained previously of bias by the ALJ. In the first federal court case, all the summaries of my complaint say the ALJ made of number of errors. She made them intentionally because she was biased.

54. I was again repeatedly denied access to my claim file while preparing my appeal to the Appeals Council (AC). I, therefore, sent the case to the AC without the use of the information in my claim file. Again, in violation of the Fifth Amendment, the US privacy Act of 1974 (5 USC 522) and HALLEX 1-2-1-35(B), (2).

55. I also sent another complaint, this time by electronic mail, to the OIG complaining about being denied access to the claim file again (Exhibit H). However, on this occasion, I did receive acknowledgement of my complaint (Exhibit I). Nothing changed though, I still could not view my claim file.

56. On April 7, 2003, I was prepared to send my 21-page-argument, along with supporting documents to the AC. However, my bags which contained these documents, the ALJ's decision and my originals were stolen (Exhibit J).

57. The next day I called the SSA's 800 number to request another copy of the ALJ's decision and an extension of time to file my appeal with the AC. Subsequently, I was able to put together another argument, this time16 pages. Although I noticed minor changes in the ALJ's decision, they didn't seem noteworthy at the time.

58. In May, 2002, I sent an argument to the AC, which included a "seven-page-handwritten statement" regarding the conduct of my hearing and its connection to the my ID theft. However, this statement is not in my claim file.

59. I submitted 44 pages of evidence to the Appeals Council (Exhibit K) but only "two pieces" of this information was "considered" in denying my request for review (R. 12, Exhibit K). The other documents I sent did wind-up in the file though (R. 8-37). This in violation of HALLEX 1-3-3-6, which says that the AC will consider any new and material evidence it receives...It is new when it is not duplicative or repetitive. It is material when it affects the ALJ's finding on conclusions and relates to the time period [on or before the ALJ's decision].

60. Additionally, my copy of this "handwritten statement" was in a bag, which was stolen on May 14, 2003, shortly after I sent my argument to the AC. According to HALLEX 1-3-1-25.( A), A claimant or representative may allege in writing that a hearing was unfair because of misconduct or bias on the part of an ALJ. The allegation may be based on an on-the-record or an off-the-record action of the ALJ. The Administrative Procedure Act (5 USC 556(b)) provides that an agency shall make its determination on the allegation a part of the administrative record and decision in the case.

61. Since my case wasn't flagged as a Priority Case per POMS DI 23020.001, even though my being homeless qualifies as a "Critical Situation," I asked for Senator Richard Durbin's help in getting my appeal expedited (Exhibit L).

62. Even though his office intervened, I still received an unfavorable decision. I also received a letter from Senator Durbin's office. However, that letter was also in a bag that was stolen.

63. A copy of my letter to Senator Durbin should have been included in my claim file. It was obvious that the AC received it; the processing time at this level was shorter than the others. I did not see this letter in April 2006 when I viewed the claim file, and it was not in the Administrative File for the 2003 federal court case.

64. Also, a copy of my letter to Senator Durbin would have been the second opportunity for the OHA to flag my case for priority processing as it should have been considered "evidence" of a "Dire Need/Critical Situation." Just answering a few questions on the Critical Evaluation form, (example included as Exhibit M) would have given my claim the priority processing the agency's regulations say it should have gotten. However, this form wasn't used in my case.

65. Why didn't the AC consider what I said in my "rebuttal" to the ALJ's discussion and findings (R.15-20)? They contained most of my argument for my disability case. Statements such as -

 - The only time the ALJ acknowledges anything I said is here... This is only part of what was said at the hearing and in the entire case record about my symptoms.
- First "the objective findings" of the medical evidence is not objective. Because the doctors in my case are biased, so too are the results of the tests they performed.

12

- The medical findings in this case were designed to not support limitations greater than the ALJ listed so that my disability claim would be denied.

**Federal Court -1**

66. In December 2003, I filed the last appeal in the process - review in Federal court - Davenport v. Barnhart 03-CV-9301, Northern District of Illinois. The complaint listed five errors the ALJ made because of bias and her favoring the fraudulent CE over the other evidence.

67. Just as with the other appeals, I had to submit my original complaint without the benefit of the information in my claim file as I was again denied access by SSA employees. I thus submitted an amendment to my complaint asking for damages pursuant to the U.S. Privacy Act of 1974 (5 USC 522) (see Exhibit E). I also sent a third complaint to the OIG regarding this problem but I received no reply and no change in getting access to my file (Exhibit N).

68. Although I asked for an outright reversal (Pl. Complaint at 14), in court papers defendant's counsel repeatedly stated that I asked for a remand (Defendant's Memorandum in Support of Motion for Summary Judgment and Response to Plaintiff's Motion for Remand, 03-CV-9301 NDIL). I didn't even know what a "remand" was at this point. Also, I felt I met the "standard" for a reversal because of the number of errors the ALJ made.

69. I complained during a status hearing of this claim in federal court about problems with the administrative file, such as sections of my treating sources progress notes were missing and pages that were in the file when I saw it before, were now gone. I also complained about discrepancies in the transcript of the first ALJ Hearing. There were quotes attributed to me that I never made; questions were supposedly asked of me that weren't (Notice of Formal Objection to Court Record and Statement in Support of Motion at 2-5, 03-CV-9301, NDIL).

70. After I asked defendant's counsel for an audio recording of the ALJ hearing (Motion to Compel Production of Documents, 03-CV-9301), Mr. Duclos said the SSA does not normally provide audio recording to claimants. Therefore, Judge Lefkow suggested I list the problems with the administrative file and transcript in an affidavit. I did (Plaintiff's Affidavit in Support of Motion, Problems with Administrative File, 03-CV-9301, NDIL). However, according to HALLEX 1-2-5-7, if a claimant requests a duplicate recording of a hearing, and the original audio recording is in the hearing office, duplicate the original audio recording and provide the duplicate to the requestor. In other words, they should have given me the audio copy of the hearing I requested.

**Post Federal Court 1**

13

71. February 1, 2005 - It took about seven and a half months for the report and recommendation to be entered. However, after a month, I still had not received a copy of it. I then requested directly from the clerk's office that a copy be sent to me at the general delivery address. I still did not receive it. Six and a half weeks after it was entered, I wound-up filing a motion asking to be served personally in open court (Exhibit O). Well, it worked. I finally got a copy of the report.

72. In the report and recommendation from the federal magistrate, she determined that the ALJ made four of the five errors I claimed she made during the hearing. I thought this warranted the outright reversal that I requested in my on page 14 of my complaint on page, but the case was remanded to the Commissioner.

73. On the fifth error, adducing the evidence about the CE, there was no ruling; nor was there a ruling on my request in the Amendment to the Complaint for damages for being denied access to my claim file.

74. In May 2005, I received a letter from the Appeals Council saying that they remanded my case to the ALJ I complained about in my case to them and In federal court. Why? My copy of this letter was stolen.

75. On May 13, 2005, as it seemed that my concerns about this ALJ were being ignored in my letters and in my previous appeals, I finally filed an Unfair Hearing Complaint against ALJ Brethauer and requested a new ALJ (Exhibit P).

76. A copy of this letter is not in my claim file and I received nothing from the SSA regarding this complaint, contrary to the regulations, which say, The complainant and his or her representative are entitled to prompt written acknowledgment of receipt of the complaint. The complainant and the representative will also be informed of how the complaint will be handled, that is, that the complaint will be reviewed or investigated promptly unless to do so would disrupt or delay a pending hearing decision. HALLEX 1-3-1-25 and 20 CFR 404.940, 416.1440(SSI)

77. In September 2005, since I had not received anything from the SSA, I sent to the OHA in Evanston , IL a letter, along with a number of documents, including completed forms from their website, which asked for updated information on my medical conditions (Exhibit Q). I also sent 10 medical release forms so that they could get my medical records from my most recent treatment sources. Additionally, I sent copies of some of the medical information to them myself. This included a copy of an EKG from February 2005 that had "high QRS voltage," and "abnormal.

**Pre Hearing 2**

78. On or about April 14, 2006, I went to the post office and picked-up several letters, one was from the SSA. I did not have the letter long. It was the only letter stolen several hours later from a bag when I had my back turned.

79. After "Emailing" the local office, on April 17, 2006, I called the SSA to ask what was in the envelope. I was told it was a Notice of Hearing for May 3, 2006. I then went to the OHA at 200 W. Adams in Chicago and got a replacement copy (Exhibit R).

80. On April 24, 2006, I called and asked about viewing my file. I was told by Briann or Ms. Bryant that I could only view it; I could not make copies. OK.

81. I went to view my file on April 27, 2006, about six days before the May 3, 2006 hearing. I still had problems getting complete access to the file. I had to debate a female SSA employee who was paranoid that I would take documents out of the file. She even had the security guard yelling at me because of this.

82. The reason why she was paranoid is probably because she didn't want me to copy any of the documents, which she told me before hand, I could not do. I just wanted to see what was in the file. I had paper and I was prepared to take notes. This, even though according to HALLEX 1-2-5-1 and HALLEX 1-2-7-30, I should have been given an opportunity to examine evidence that I didn't submit before it was even included in my file.

83. I noticed all the documents, including the medical evidence, I sent to the Office of Hearing Appeals in Evanston , Illinois in September 2005, were not in the file.

84. I immediately wrote a letter to ALJ Shinitzky telling him that I was upset that this information had not been included in my file and I had no choice except to bring alternate evidence to the hearing May 3rd since I did not want another delay.

85. This letter and a number of other documents related to this claim have been deleted from my Email Account where they were stored. Also deleted, a complaint I sent to the OIG regarding my treatment about access to my file, particularly since I was told the the manager was not in the office when I asked to speak to him or her (Exhibit S).

**ALJ hearing 2**

15

86  I should have had a hearing on May 3, 2006 when one was scheduled. It seemed some of my
concerns had finally been addressed - I had a new ALJ and the hearing was scheduled in the hearing
office that was most convenient for me. I also believed I equaled a listing and had the evidence to prove
it. However, they (ID thieves) again caused this hearing to be delayed.

87. When I arrived for this hearing, I was told by the presiding ALJ, Edwin Shinitzky, that this was not a
hearing, it was "an information session." He said he was trying to find-out where I was.
Supposedly several letters had been sent to me but they were returned, "undeliverable".

88. Additionally, he said the AC remanded my case to the ALJ and that's where it belonged; he
was sending it back to her even though he was aware of the Unfair Hearing Complaint I filed against her.
I protested his sending it back to her, but he did it anyhow, despite 20 CFR 498.204(c) (1-4) and 20 CFR
498.205 which say, The ALJ does not have the authority to find invalid or refuse to follow statutes or
regulations or delegations of authority from the Commissioner of Social Security, enter and order in the
nature of a directed verdict, compel settlement negotiations, or enjoin any act of the Commissioner or the
Inspector General.

89. This was definitely contrary to the information provided in the Instructions on "How to File an Unfair
hearing Complaint," where it says -

**What you should do if you think you were treated unfairly**

If you think any ALJ treated you unfairly, you should tell us about it and ask us to look into it. You can ask at any time,
even while we are deciding your claims for benefits. If you think the ALJ who will conduct your hearing is not fair, you
can ask for another ALJ to hear your claim.
You should give us your complaint in writing. But you also can tell us about your complaint, and we will write it down
for you. Please give us as many details as you can, including:

How you think you were unfairly treated, and who treated you unfairly;
When you think you were unfairly treated; and
Who else saw or heard the unfair treatment.
Also please tell what actions or words you thought were unfair.

I did all this and I still got the same biased ALJ.

90. I also protested ALJ Shinitzky ordering additional CEs, including a stress test. When I asked him why
they were necessary, he said he was doing it at his discretion. I refuse to submit to any more CEs
arranged by this agency. The additional CEs were scheduled with the same medical group with Dr. Kale
and Dr. Nelson. Even though the 70 plus visits to doctors (Pl. Complaint 19-25, 07-CV-1888, NDIL) I've
had over the years should provide sufficient evidence of my impairments, the ALJs keep ordering more
CEs. I refuse to attend anymore CEs.

16

91. I believe these CEs are just occasions for my ID thieves to have these doctors - an ophthalmologist, a psychiatrist and an internist - say that I do not have the physical problems I claim, but I do have a mental problem I don't claim to have. It's also against SSA rules which say, In making any determination as to whether a claimant is under a disability, the SSA is required to make every reasonable effort to obtain from the claimant's treating physician or other treating health care provider all medical evidence, including diagnostic tests, necessary to make the determination properly prior to evaluation medical evidence that is obtained from any other source on a consultative basis. 42 USCA 423(d)(5)(B), applicable by 42 USCA 1328 c(a)(3). Accordingly, the SSA generally will not request a CE until every reasonable effort has been made to obtain evidence from a claimant. 20 CFR 404.1512(f)(OASDI).

**Post hearing 2**

92. In June 2006, I sent a letter to the Commissioner protesting the transferring of my case back to ALJ Bretthauer and the ordering or more CEs which would result in additional delays (Exhibit T).

93. In reply I received a letter from the associate commissioner who ignored all the issues I raised and refers to a hearing in the past tense, even though I had not yet had the second ALJ hearing (Exhibit T).

94. On August 10, 2006 - I called the SSA's 800 number to check the status of my disability claim. I was told by "Clara," who said my case "is not like the rest," to call my local office at 1233 W. Adams . Before she told me this, she said that it appeared that I was "awaiting a hearing decision." I told her that couldn't be right since I had not had a hearing. .

95. I was not far from this office, so I went there and told a young blond woman that I was told by ALJ Edwin Shinitzky that my hearing would take place in 9-12 weeks. It was now past that point. She said that my case had been "assigned to Judge Bretthauer." That was the only information available according to her.

96. In August 2006, I wrote a letter raising these same issues to the Regional Chief Administrative law judge. I received no reply (Exhibit U).

**Pre-Federal Court 2**

97. By January 2007, I had not received anything whatsoever from the SSA. I therefore, started working on a case in federal court for mandamus jurisdiction (Exhibit V).

17

98. In February 2007, on two different occasions while I was in the Austin Branch of the Chicago Public Library working on this mandamus complaint, I was suddenly asked to leave by the branch manager, Mr.Christie. First, on February 22, 2007, after being there over two hours. Then on February 26, 2007, after being there over five hours, I was told I had too many bags, against their rules. I wound-up filing a complaint with against the library with the Cook County Human Rights Commission. I believe the library suddenly barring me from entering was to prevent my working on the complaint against the SSA (Exhibit W).

99. My being barred from the libraries and not having access to a computer or typewriter halted my work on this complaint temporarily. During the down time, I suddenly started receiving letters from ALJ Bretthauer regarding CEs and a hearing (Pl. Complaint 13, 07-1888, NDIL). This was more proof to me that my concerns were still not being addressed.

**Federal Court 2**

100. In April 2007, I filed the complaint in federal court, Davenport V. Barnhart/Astrue, 07-CV-1888, NDIL), asking the court to compel the Commissioner to hold my unreasonably delayed hearing in front of an Unbiased ALJ. My case was at this point almost 800 days past the date of the remand order. This in violation HALLEX I-2-8-18(b), which says that a case delayed 125 days past the remand date is supposed to receive priority processing.

101. There wasn't much action in this case. The defendant filed a motion for enlargement of time, to which I objected since it would further delay my case. They had 60 days, and still couldn't answer? Extra time was granted. This time was needed so that the administrative proceedings that ALJ Bretthauer started in March could proceed.

102. The Defendant's counsel then filed a motion to dismiss because of the bogus proceedings that ALJ Bretthauer scheduled.

103. I never received any notices by mail regarding this case from the court or the defendant. A result of my ID thieves intercepting my mail most likely. I, therefore, had to go to the court clerk's office to get any developments in the case from the public access computers.

104. I did receive notice of a hearing with ALJ Bretthauer a few days before it took place, however, I did not attend. This hearing in June 2007 was rushed to coincide with the federal court proceedings; and the documents related to it were post-dated to the time I started working on the mandamus complaint. That would be the only reason to explain why I didn't receive them. I received the first letter from ALJ

18

Bretthauer in March 2007 regarding CEs. Again. according to the regulations, an ALJ cannot conduct a hearing if he or she is prejudiced or partial to any party or has an interest in the pending matter. 20 CFR 404.940.

105. On July 13, 2007, after trying unsuccessfully to get a copy of the Defendants Motion to Dismiss Plaintiff's Complaint from the public access computers, just after closing. I was finally given a copy by one of the assistant clerks.

106. In support of defendant's motion to dismiss, Assistant U.S. Attorney Kathryn Beverly said that I did not pursue all the remedies available to me as far as removing the ALJ including filing an Unfair Hearing Complaint (Defendant's Memorandum in Support of Motion to Dismiss 4, 07-CV-1888). I did file this complaint (see Exhibit P). She and others who work for the SSA just chose to ignore it, along with the other complaints about this ALJ in my appeals and letters (Exhibit X).

107. About 14 hours after I received the copy of this motion, I was arrested by the Chicago Police and charged with trespassing on state property. This after I and a number of other homeless persons sought shelter from storms under the overpass at 500 S. Franklin . I was taken to jail where the police took and did not return my bags The bags contained all my personal belongings, including several sets of copies of the documents which show how the ID thieves stole our property (Exhibit Y).

108. Apparently the problem was a question in defendant's motion to dismiss which challenges me to give a reason why I believe the ALJ is biased. Well, as I said before it's because of my ID thieves. The statement on Page 5 begged to be answered with proof of the ID theft, which is the reason my bags were taken by the police.

....continuing on page 5, the Defendant - The court must start from the presumption that ALJs are unbiased...Plaintiff can only rebut these presumptions by showing the ALJ had a conflict of interest or by showing some other specific reason for disqualification. Id at 195.

My answer: I believe the ALJ had a hidden agenda - to issue an unfavorable decision. I believe that this was done through the influence of my ID thieves/Real Estate Scam Perpetrators - Loop Mortgage Corp/State Title. I also believe they were responsible for my case being sent back to the first ALJ Cynthia Bretthauer from ALJ Edwin Shinitzky on May 3, 2006. Additionally, they are responsible for my bags being taken on July 26, 2007 - approximately 14 hours after I received a copy of the Defendant's Motion to Dismiss. They obviously didn't want me to respond to it. They most likely had a concern about my answering this question and my using the documents that they've taken to prove the ID theft, which were also in the bags. Additionally, they are the reason for the CEs being ordered when I have sufficient evidence from my treating sources.

109. I spent five days in county jail even though I had fewer previous charges than some of my cohorts who attended court with me.

19

110. I was released from jail about 12 hours before the August 2, 2007 status hearing in my case against the SSA. Then, the judge told me then that if what the defendant's counsel said in the motion to dismiss was true, he would dismiss my case. It wasn't.

111. On August 13, 2007, after I prepared my answer to Defendant's Motion to Dismiss, I filed it.

112. The next day, again about 14 hours after a trip to the court clerk's office, this time to file my answer to defendants complaint, I was arrested by the same Chicago Police officers, for the same offense, in the same place. Coincidentally, there were more storms overnight, and I again sought shelter from them under the overpass at 500 S. Franklin.

113. I wasn't in jail long this time as I was released on an I-Bond.

114. On August 14, 2007, I attended the last status hearing for case 07-CV-1888. At this time Judge Kennelly dismissed my complaint for subject matter jurisdiction. He said he could not compel the Commissioner to give me a hearing. This despite the fact that my hearing was long passed the 125-day-limit for priority processing of a Delayed Remand Case, HALLEX I-2-8-18(b).

115. The judge gave the issues I could raise on appeal. However, he said several times that I could still appeal to the AC. Obviously that is what LMC wanted me to do.

**Post Federal Court 2**

116. On September 12, 2007, after Judge Kennelly dismissed my case, I decided to follow-up on the Unfair Hearing Complaint I filed in May 2005. It didn't seemed to do any good though. I followed the instructions in the brochure How to file an Unfair Hearing Complaint SSA Publication No. 05-10071 which says, If you think that we are not doing all that we have said we would do, please write to Special Counsel. I did (Exhibit Z).

117. On Sept 16, 2007, because I figured with all the fraud involved with my case, I had to send at least a qualified request to the AC.

118. On October 18, 2007, I called the SSA and spoke with a female who told me that I should hear something from the SSA within 30 days by mail.

119. On or about November 27, 2007, I went looking for something from the SSA in the mail. Nothing.

20

120. In early December 2007, I called the SSA again. This time I spoke with a male who told me that i was misinformed by the female I spoke with in October. He said that generally nothing is sent out by the AC until they reach a decision and he said that is where my claim file is now. He also said that it will take another 7.6 months for them to decide what to do with my case. He also said he couldn't tell me what they would do. In other words, the letter to the Special Counsel regarding the Unfair Hearing complaint was ignored while the letter to the AC was acted upon. This supposedly is where my case is now, with the AC. The details of this particular call I kept in my journal have been deleted as well as other information related to this case.

121. Additionally, I should point out that frequently and sometimes intensely during these delays, numerous people - "associates" as well as strangers - have come to me and in various ways have tried to persuade me "get a job, any job," and abandon this disability claim I filed almost seven yea s ago. Also, during this time, there have been people who have tried to convince me to forget the current claim I have and file a new application for disability based on having a mental impairment. I was told a number of times this was the "sure way" to get approved. I'm sure my ID thieves wouldn't try to impede an application based on this. Of course, I'm not stupid, and I know both tactics would benefit my ID thieves. I also know they probably paid the people to try to persuade me.

121. In conclusion, It is clear from the foregoing history of my disability claims that they have been so badly mishandled by SSA employees that my basic rights have been violated. I therefore request 1) An immediate, fair hearing in front of an unbiased ALJ; 2) Damages for the fraud and the intentional, excessive delays which disregarded my due process rights and my right to Equal Protection under the law; 3) Damages for pain and suffering, emotional distress, the lost of vision in my left eye, lack of shelter and the safety and other issues that arose because of it and any other relief that I may be due; 4) A jury trial; 5) Leave to amend this complaint to include other defendants as they/their names become known.

Respectfully Submitted,

*Louise Davenport*

Louise Davenport
Pro Se Plaintiff
No mailing address
Email Only - louport35@yahoo.com
louport35@aol.com

Note to Defendants: Please try sending your Answer to me at one of the Email addresses above. If you can't send it to by Email, then I will get your Answer from the Clerk's office. Please include Email address so that I can confirm receipt of your Answer.
Thank you.

Social Security Administration Bivens Complaint 2008,  Davenport v. Astrue et.al

**List of Exhibits**

Description                                                              pages

A   Identity Theft Affidavit                                              3
B   Housing and Income Affidavit                                          1
C   Viewing My File                                                       1
D   First Letter to OIG                                                   1
E   Amendment to Complaint                                                1
F   Sent copy - Emails to A. Tracy                                        1
G   Service to the Homeless                                               1
H   Letter to OIG - Continuing problems viewing my file                   2
I   Message in Response - Acknowledgement, OIG                            1
J   List of Stolen Bags                                                   2
K   List of documents to Appeals Council                                  1
L   Letter to Richard Durbin                                              1
M   Critical Evaluation Sheet                                             1
N   Letter to OIG - I'm still having problems                             1
O   Michael Dobbins Letter/Docket Entry Copy - Motion for "in-hand service"   2
P   Unfair Hearing Complaint - CALJ                                       2
Q   Letter to Evanston OHA, September 2005                                1
R   Message to Local Office Re: Stolen Letter/Notice of Hearing           2
S   Obstacles to this complaint; deleted documents                       1
T   Letter to Commissioner, June 2006/Assoc. Commissioner's Reply        2
U   Letter to RCALJ                                                       2
V   Draft Copy - January 2007                                            1
W   CCHRC – CPL                                                           2
X   Other Acts for sub of ALJ                                            2
Y   Receipt of Bag/Affidavit - Contents of Bags                          3
Z   Special Counsel Letter                                                2

Previous Cases Referenced

Davenport V. Barnhart, 03-CV-9301

Davenport V. Astrue, 07-CV-1888

2d0666

Name: Davenport, Louise          No Phone; Email: louport35@yahoo.com

# **Identity Theft Affidavit**

(1) My full legal name is  Louise -- Davenport

(2) (If different from above) When the events described in this affidavit took place, I was known as Same as above

(3) My date of birth is 24/11/1966 - 24th of November 1966 (day/month/year)

(4) My Social Security number is _____  —  —  —  _____

(5) My identification card state and number are IL___ — —

(6) My current mailing address is - Louise Davenport, ~~General Delivery,~~ ~~433 West Harrison Street, Chicago, Illinois 60699~~

(7) I have had this address since January 2005 (month/year)

(8) (If different from above) When the events described in this affidavit took place, my address was - 2565 West Washington Boulevard, Chicago, Illinois 60612

(9) I lived at the address in Item 8 from January 1972 until December 1998

(10) I have no telephone number at all. I do have an Email address: louport35@yahoo.com

**How the Fraud Occurred.**      **Check all that apply for items 11 - 17:**

(11) (X)  I did not authorize anyone to use my name or personal information to seek the money, credit, loans, goods or services or to act on my behalf.

(12) (X)  I did not receive any benefit, money, goods or services as a result of the events described in this report.

(13) Although identification documents (for example, credit cards; birth certificate; driver's license; Social Security card; etc.) were stolen on or about December 12, 1998, documents related to our ownership claims to property attached to 2565 W. Washington Chicago, IL 60612-1612-423-006 were also stolen. This includes property tax payment receipts; water bill payment receipts; Cook County Collector proof of payments; rent demands in the form of five-day and 30-day notices to me and to my mother (the legal owner of the property), duplicate payment receipts, etc.

(14) To the best of my knowledge and belief, the following person(s) used our information (for example, my name, address, date of birth, existing account numbers, Social Security number, mother's maiden name, etc.) and documents related to the property to get money, credit, loans, goods or services without my knowledge or authorization:
Dave Fleischman, Loop Mortgage Corp aka State Title
77 West Washington, Ste. 1113
Chicago, IL 60602      Phone number(s) (if known)

Additional information (if known)

(15) (X) I do know who used my information or identification documents to get money, credit, loans, goods or services without my knowledge or authorization.

Exhibit A (1)                                                   23 of 66

Page 2          Davenport, Louise          Email: louport35@yahoo.com

(16) Additional comments: (For example, description of the fraud; which documents or information were used or how the identity thief gained access to your information.)

<u>Identity Theft Summary</u>

 Although the Identity Theft, which started as a real estate scam, has been going on since at least June 1997, I didn't know what was exactly going on until around November 2001. That's when I was told that there was a real estate scam being perpetrated using my name and that I would be killed if I didn't do certain things.

 The perpetrators, real estate property tax buyers, State Title aka Loop Mortgage Corporation(LMC), have had me assaulted verbally, physically and sexually a number of times over the years to try to force me to do what they want. They prevented us (my mother and me) from getting a house before and after they had us evicted from our home of almost 27 years at 2565 W. Washington Boulevard, Chicago, IL -16-12-423-006. They then forced my mother and me to each rent a room at 3327 W. Monroe. I was there from December 1998 to January 2002. Apparently this was to hide us there. This was the reason the landlord, Marie Reichadt, would get really angry when I tried to get a landline telephone or mail at this address.

 The ID thieves keep trying to force me into relationships with guys I don't like. While at the same time they keep tying to force me into living situations where I don't want to be - either I go to a shelter or I live with someone they choose. This way some third party would be able to intercept the money the ID thieves get from the property they stole from us. I don't want to do either. With these as my only options, I prefer to stay on the streets.

 I was told by someone working for them that the perpetrators "take people's property and pay politicians to look the other way." Apparently they pay more than just politicians. Well, this is how they obtained the property to which my mother and I had ownership claims at 2565 West Washington, Chicago, IL 60612 - 16-12-423-006. They knew we had ownership claims to the property and they kept us from claiming it by corrupting every lawyer we tried to get to file a claim in court. They then claimed the property themselves, using our names. They first drew up a fake trustee's deed and put the property in a land trust. I suppose this deed has our names on it since at the time this deed was filed in May 1997, we started getting solicitations about refinancing a loan on "our house." Of course, we don't "own," as in control, any kind of property. Despite my mother being the legal owner pursuant to 735 ILCS 5/13 -109, they somehow had us evicted from the property in December 1998. Since then, they have taken or had city agencies take practically everything we owned. This includes money from bank accounts, insurance proceeds, my car, our pets, personal belongings and our good health. I am now homeless and living on the street. And after forcing my mother to stay in a nursing home for the last three years of her life, she died.

 They still continue to try to dictate every aspect of our lives - mine and my daughter. They had the state take custody of her in 2002. This so that they could use her as necessary - such as denying my seeing her to retaliate against me; or to have her "fronting" for them in this scam. They used her and other people connected to us to do the "dirty work." The ID thieves get most of the financial benefit though.

 They've also had the state take the baby they forced me to have in March 2006. This, after they gave the baby my name. Shortly afterwards, I learned of instances where my personal information, address in particular, had been changed to where the baby was staying.

 From personal relationships to my health care, I can't do anything without these people inserting themselves. This includes my Social Security Disability claim which they've had delayed now over six and half years. I also suspect they may be trying to intercept the benefits from this claim themselves.

 Since this identity theft has been going on almost ten years, who knows when this will end. They've already destroyed my life, so I guess it doesn't really matter when it ends.

Davenport, Louise          Email: louport35@yahoo.com

**Victim's Law Enforcement Actions**
(17) (check one) I am/ am not willing to assist in the prosecution of the person(s) who committed this fraud.

(18) (check one) I am/ am not authorizing the release of this information to law enforcement for the purpose of assisting them in the investigation and prosecution of the person(s) who committed this fraud.

(19) (check all that apply) I have/ have not reported the events described in this affidavit to the police or other law enforcement agency. The police did not write a report. In the event you have contacted the police or other law enforcement agency, please complete the following:

**(Agency # 1)**
Illinois Attorney General
(Date of report)(Report number, if any)  March 9, 2007, File Number - 179115
(Phone number)(Email address, if any)  Nicole Armour 1-866-999-5630

**(Agency # 2)**
I have tried on a number of occasions to file a police report with the Chicago Police Department, however, they refused to take the report.

Federal Trade Commission (Date of report) 2002 and updated in 2006 (Report number, if any)(Phone number)(email address, if any)

Documentation Checklist
Please indicate the supporting documentation you are able to provide to the companies you plan to notify. Attach copies (NOT originals) to the affidavit before sending it to the companies. Since the ID Thieves have stolen all my documents, maybe just my "list of stolen bags;" which contained the documents.

(20) (X) A copy of a valid government-issued photo-identification card (for example, your driver's license, state-issued ID card or your passport). If you are under 16 and don't have a photo-ID, you may submit a copy of your birth certificate or a copy of your official school records showing your enrollment and place of residence.

(21) Proof of residency during the time the disputed bill occurred, the loan was made or the other event took place (for example, a rental/lease agreement in your name, a copy of utility bill or a copy of an insurance bill).(Officer/Agency personnel taking report)(Officer/Agency personnel taking report).

(22) A copy of the report you filed with the police or sheriff's department. If you are unable to obtain a report or report number from the police, please indicate that in Item 19. Some companies only need the report number, not a copy of the report. You may want to check with each company.

Signature _____          (date signed) _____

I certify that, to the best of my knowledge and belief, all the information on and attached to this affidavit is true, correct, and complete and made in good faith. I also understand that this affidavit or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may constitute a violation of 18 U.S.C. §1001 or other federal, state, or local criminal statutes, and may result in imposition of a fine or imprisonment or both.

Notary

"OFFICIAL SEAL"
WANDA MEANES
My Commission Expires June 10, 2010

3

Exhibit A (3)

25 of 66

## AFFIDAVIT OF INCOME
## AND HOUSING STATUS

I, Louise Davenport, duly sworn upon oath deposes and says:

1. My name is

2. I was born on  November 24, 1966 in Chicago, Cook County, Illinois

3. My SSN is

4. I currently have no permanent place of residence.

5. I have been homeless since Janurary 2002

6. I am homeless because of Identity theft. I did not authorize anyone to
use my name or personal information to seek money,credit, loans, goods or services.

7. Further, my only income is $162.00 in monthly food stamps.

8. My mailing address is ~~General Delivery, 433 West Harrison Street~~, Chicago, Illinois ~~60699.~~

Under penalty of perjury, I affirm that the above is a true and accurate statement of the facts contained therein.

Signature    *Louise Davenport*

Date         *June 2, 2008*

Sworn and subscribed before me

This *02* Day of *June  2008*

Notary Public

*Wanda Geanes*

```
**********************************
*        "OFFICIAL SEAL"         *
*         WANDA GEANES           *
*  Notary Public, State of Illinois  *
* My Commission Expires June 10, 2010 *
**********************************
```

Exhibit B

*26 of 66*

**Viewing My File**

Thursday, April 3, 2003 4:45 PM

*VIA EMAIL*

**From:** "Louise Davenport" <louport35@yahoo.com>

**To:** ll.fo.chicago.near.southwest@ssa.gov

Today, Thursday, April 3, 2003, I called the SSA 800 number four times. The first time I reached Krista who gave me the number to the Office of Hearing and Appeals in Evanston. This is where I was told my file is still being held last week, even though I received a decision in late February. I asked Krista for the phone number so I could make an appointment. I tried. However, Jean said it is not there.

I then called the 800 number again. This time I reached Stacy. She told me my file was not at the office listed on the decision but at 1233 West Adams. I asked for the number to that office and I tried to call to see if my file really is there. I also wanted to see if I need an appointment to view it. The last time I saw it there, I did not need an appointment. Just want to be sure though.

When I called, I stayed on hold over eight minutes. I decided not to put anymore money in the payphone when it asked for more. I did do as the recording said - hang-up and call the 800 number. However, when I called, I was told it would be four minutes until someone answered the call. When these four minutes were up, I just heard silence. I had been listening to music and information about SSA.

I hung-up and tried to call again. However, the same thing happened, this time after three minutes. Since I can't get my question answered by phone, I decided to e-mail you. Here's hoping I have more success this way. Although, my question to the SSA last week, using the form on their web site, still hasn't been answered yet. That's why I made the first telphone call. Therefore, I would appreciate a response by Monday, April 7. If I don't receive one by then, I'm going to assume nothing has changed and I do not need an appointment to see the file. And I will just come into your office to see it.

Sincerely,
Louise Davenport

*Received No Reply*

Office of Inspector General
Social Security Fraud Hotline
P.O. Box 17768
Baltimore, Maryland 21235

Louise Davenport
P.O. Box ~~7547~~
Chicago, IL ~~60642~~

Via Regular Mail

February 21, 2002

Dear Inspector General Huse,

If you do not agree this is fraud, you must admit it is mismanagement.

Every time I try to make an appointment at or send something to the Social Security District Office at 233 W. Adams in Chicago, there's a problem. This started on or around July 13, 2001. I went into this office to file a disability claim. After I gave the woman my Social Security number, she said her computer was down. She gave me the national 800 number and told me to call it to make an appointment to come into the office.

I called the number everyday for about three days. Each time, I would get a busy signal. I ended-up writing a letter to the manager of this office asking her to send me an appointment by mail. I did not receive one. I did receive a letter telling me to call the 800 number again to schedule an appointment. I was doubtful at first, but on the first try, I was able to make an appointment.

I also had a similar problem when I tried to file an appeal. Since the letter I received said my request for an appeal had to be in writing that's what I did. I wrote a letter to this office asking someone there to send me the appeal forms. Since we're both in Chicago, I assumed it would not take more than ten days to receive them. I only received the forms after I called the 800 number and requested them.

I received the forms and completed them. I mailed them on January 10, 2002. I assumed my reconsideration was being processed. I learned it wasn't about a week after I mailed to this office a request for an appointment to view my file. I realized that I should have done both at the same time. On January 24, I called the 800 number and asked for an appointment to view my file.

I first spoke with "Carolyn" who did not tell me where my file was. She had asked most of the questions she needed answered. the she asked for my address. Before I could answer, we were disconnected. I called back and asked to be reconnected to her. However, "Mr. Alicea" told me with certainty that the file was not in the local office. He also told me that the appeal forms I sent to the local office was not in the computer yet. he told me to give them another week. They were probably in Springfield with my file.

On February 1, I called the 800 number again. this time I spoke with "Enette" who told me my file was in the local office. Then she said to call that office to be sure.

On February 5, I tried to call this office twice, but each time, I received a busy signal. The next day I called the 800 number again and this time I spoke with a "Mr. Neal." He said my file was the Chicago office and the last entry in the computer regarding movement of the file was in November.

I called the DDS in Springfield and relayed what Mr. Neal said. Mary Jane in Inquiries said, no, they did not have my appeal forms and the last time my file was there was in November.

I finally called the local office where I reached someone - Ms. Burns. After I repeated what Mr. Neal said about my file, i asked her if it was there. She said, "If they told you it was here, then it's here." I then asked her t make an appointment for me to view the file. She said she couldn't because she was just taking calls.

On February 7, I called the 800 number again. This time I spoke with "Linda" who told me my appeal forms were never received. She told me she could not make an appointment for me to view my file. She told me to just take my copies and go to the office and ask to see the file.

On February 14, I finally went into the office at 1233 W. Adams. I arrived at about 2:35 pm, and as usual with my arrival, something happened. At about 2:40 pm, the building was evacuated because of a "possible gas leak." We waited in the parking lot until about 3:05 pm, when we were allowed back into the building. At about 3:25 pm, my name was called by Ms. Salazar. I gave her my coples for her to copy. she started to read one of the reasons why I was appealing and I interrupted her. I told her if the Social Security Administration was told the same thing I was told by the doctors, how can they say I'm not disabled. The doctor they sent me to told me he did not know what was wrong with me. Even after I asked him directly, he said I would need more test. No, I don't remember his name.

I told her this was the reason I wanted to see my file so I could see what the doctor said. She said, " I have to see if it is here." she left with my copies and did not return until 3:50 pm. She had my file open on the counter. She said there doctor's statements were in Springfield and the only documents in my file were the forms I originally completed when I filed the claim. Of course, Ms. Salazar made no attempt to let me see the file after she told me this.

Why would the doctor's statements - the most important part of the file - be in Springfield when the rest of the file is here?

Why does it take the maximum amount of time for anything to be done in my case? On the receipt for my claim, copy enclosed, Ms. Bailey crossed-out 45 days then wrote 120 days as the amount of time it would take to receive a decision. It actually took 113 days, but I don't think I would have received the determination soon if I had not been calling to find-out what was the delay. All the information that was requested was in by October 14. Were every one of the 35 days after that necessary?

On February 14, Ms. Salazar did not give me a receipt for filing my appeal. However, she did tell me it will take one-three months for a decision to be made. I'm sure it will be closer to three months than to one.

Also, I could never communicate with the adjudicator for my claim. Thomas Bonner called me on my cell home on August 2, 2001. That was the only time I spoke to him. Although I sent him at least two postcards and at least one letter, I never received a response. I also tried to call him between 15-25 times from August to November, but I could never reach him. I would usually get his voice mail. Though when I would leave a message for him to call me, something would go wrong with my cell phone so that I could not receive calls.

Last summer, before I took the exam for a Real Estate Sales License, I called one and wrote another real estate broker trying to "line-up" a sponsor. I left messages when I was able to get through to the one by phone and the one I contacted by mail never

Exhibit D (1)
about:blank

28 of 66
5/19/2008

responded. Since I filed my disability claim, however, I have received a number of solicitations from real estate broker who would like to sponsor me for my license.

Also, I recently received a long overdue certificate of completion of a tax preparation course from H&R Block. Coincidentally, last week there was a woman in the library who was having trouble with them and it seems she wanted me to know it. However, as much as I wanted to help her, it's been two years since I prepared a tax return. Besides, I just wanted the certificated because it was owed to me. My point is, it seems someone doesn't want me to get disability benefits. I'm not sure why. Maybe I could buy a house with the income?

It may be my imagination but since I visited your website on February 15, it seems people have been trying to intimidate me into not writing you about the experience I had at the Social Security Office.

Inspector General Huse I would be interested to know whether you think I'm wrong – that this is fraud. I'll be awaiting your response.

Sincerely,

Louise Davenport


P.S. - The reason I stopped pursuing a real estate career is because I figured I wold have to show houses. I had to go up to the 2nd floor and was getting winded trying. I figured I should try another career path.

P.P.S. - On February 14, no one mentioned that my forms were past the 60 day limit. No one asked why I was just bringing them in. I did mail them so it's not my fault they say they didn't receive them.

| | |
|---|---|
| **Date:** | Sat, 19 Mar 2005 13:38:54 -0800 (PST) |
| **From:** | louport35@yahoo.com    Add to Address Book    Add Mobile Alert |
| **Subject:** | ds amendment |

### AMENDMENT TO COMPLAINT

I respectfully reqquest damages from the Social Security Administration in the amount of

$50,000 for compensatory damages and $200,000 in punitive damages for denying my access

to my Social Security file. According to their own rules, my file is suppose to be kept at the

Office of Hearings and Appeals until all of my appeals are exhausted, where I could view it if

necessary. However, on November 17, 2003, after making an appointment, I went too view the

file at the OHA in Evanston, Illinois. After I arrived, I was told by Pam, my file was not there. I

then left but shortly returned. I then asked to speak with a manager. I eventually spoke with a

woman who introduced herself as a group manager. She then told me my file was in

Springfield, VA, in a place she referred to as the "caves." She told me she could order my

file but it would take 30 days for it to arrive.

 On Decemebr 18,  I figured my file should be here by now. I calledSSA's 800 number and a

woman named Gloria told me it would take seven to eight weeks for my file to arrive. That's 49

to 56 days. I was already down 4 of the 65 days when I received the notice because although it

was dated October 27, it wasn't postmarked until October 31. This means I only had 61 days

instead of 65 to prepare this appeal. When I questioned this, she hung-up on me. Now, since

some of the medical records I had planned to use were stoledn from me, I thought I could get

copies form my file. Well, it's obvious someone doesn't want me to use this information. I think

it's because of page 1 of the medical records from Cook County Hospital from March 2001. My

original and my copy had a notation of an S3 gallop on it. It's a sound that doctors can hear

through their stetoscopes and it's a sign of Congestive Heart Failure. I am also providing copies

of e-mail messages and letter I sent to the SSA's Inspector General about this problem In the

past. I don't know which law this is under but I know it's wrong and I want it to stop. I also still

want to see my file before this case comes up.

*Exhibit E*

**Sent**    *Re: Complaint of D. Kale*    Upgrade to the all-new Yahoo! Mail

View: **All Messages**    Messages 626-650 of 677 **First** | **Previous** | **Next** | **Last**

Delete    Mark ▼    Move... ▼

| To | Subject | Sent | Size |
|---|---|---|---|
| customerservice@inhouse... | **Product Availability and Order Information** | Sat, 3/8/03 | 1KB |
| jaime@loandepotusa.com | **Information you requested** | Sat, 3/8/03 | 1KB |
| customerservice@inhouse... | **Product Information and Order Informatin** | Tue, 3/4/03 | 2KB |
| jaime@loandepotusa.com | **Communication about Loans** | Fri, 2/28/03 | 1KB |
| atracy@ildpr.com | Telephone Problems | Fri, 2/28/03 | 2KB |
| ctahelp@transitchicago.com | **More CTA/CPD Incidents** | Fri, 2/28/03 | 4KB |
| ctahelp@transitchicago.com | **Kedzie/Homan Station and the use of "offensive" language** | Fri, 2/28/03 | 4KB |
| ctahelp@transitchicago.com | **Incidents Involving CTA and CPD** | Fri, 2/28/03 | 7KB |
| cserv@cityofchicago.org | **Unannounced Price Changes** | Fri, 2/28/03 | 3KB |
| atracy@ildpr.com | More Communication Problems | Wed, 2/26/03 | 1KB |
| info@uniglobalpharmacies.c... | inability to get price of products on your website | Mon, 2/24/03 | 2KB |
| consumeraffairs@ferrarapa... | **Ingredients of Red Hots** | Mon, 2/24/03 | 3KB |
| info@usamedicine.com | Product Availability | Mon, 2/24/03 | 2KB |
| pbroker671@ameritech.net | **Buying a Home** | Mon, 2/24/03 | 2KB |
| Lori.Malczewski@walgreens.... | Re: my mailing address | Tue, 2/18/03 | 8KB |
| unique1342@aol.com | **Bid for VA Property** | Thu, 2/13/03 | 3KB |
| RLC335@vba.va.gov | **Unanswered Question from DVA** | Tue, 2/11/03 | 11KB |
| Lori.Malczewski@walgreens.... | Walgreen's Information | Tue, 2/11/03 | 4KB |
| ctahelp@transitchicago.com | **Emergency Transfers** | Tue, 2/11/03 | 8KB |
| lgykgera@vba.va.gov | Fwd: Issues Not Addressed in Your E-mail - 2nd Request | Thu, 1/30/03 | 4KB |
| francesnance@lawndale.org | **New appointment** | Thu, 1/30/03 | 2KB |
| ctahelp@transitchicago.com | **Emergency Transfers** | Tue, 1/28/03 | 8KB |
| customerservice@whiteca... | **Previous e-mail messages** | Mon, 1/27/03 | 3KB |
| lgykgera@vba.va.gov | Issues Not Addressed in Your E-mail | Fri, 1/24/03 | 1KB |
| tward@chipublib.org | Computer Usage | | |

*Exhibit F*

31 of 66

# Service to the Homeless

## Collaboration Links

**List of All Agency Collaborations**

✗ **Health Care for the Homeless**

Health Services and Resources Administration

**Serious and Violent Offenders Initiative**

The Department of Justice

**Projects for Assistance in Transition from Homelessness (PATH)**

Substance Abuse and Mental Health Services Administration

**SSI/SSDI Outreach, Access and Recovery (SOAR)**

Substance Abuse and Mental Health Services Administration

**Kansas City Regional Project Representative Payee Study**

Department of Veteran's Affairs

## SSA Reports

HOPE Final Evaluation Report
SSA ICH Report (2006)
SSA ICH Report (2005)
SSA ICH Report (2004)
SSA ICH Report (2003)
SSA Report to Congress (2002)

## Related Program Instructions

Institutionalization
Prerelease Procedure
Representative Payment Program
Safe Havens Demonstration Project
SSA Ticket to Work Program

## Information on Our Programs

A Guide to SSI for Groups and Organizations
Understanding SSI
Spotlight on Homelessness
Social Security Disability Insurance (SSDI)
Supplemental Security Income (SSI)
Social Security Program Rules
Social Security Benefit Information Publications
Social Security Handbook
Disability Evaluation under Social Security (The Blue Book)

## How Do I Qualify for Benefits?

Benefits Screening Tool
Medicare
Social Security Disability
Social Security Retirement
Social Security Survivors
Special Veterans
Supplemental Security Income (SSI)

## Funds Availability for Outreach Projects

Homeless Outreach Projects and Evaluation (HOPE) Information
Collaborative Initiatives to Help End Chronic Homelessness

Exhibit G

5/1/2008

Date:       Thu, 10 Apr 2003 10:13:14 -0700 (PDT)
From:       "Louise Davenport" <louport35@yahoo.com>
Subject:    Continuing Problems with SSA Employees and My Disability Claim
To:         oig.hotline@SSA.gov                                    *VIA EMAIL*

Dear Inspector General:

Why am I required to do so much more than other people who file Social Security Disability and SSI claims? Not only do I have to prove I have medically determinable conditions that cause my symptoms, I have to do it with tainted medical evidence. If that weren't enough, I also have to try to file my appeals in spite of the SSA employees' best efforts to try to stop me. At least that's how it looks from my perspective.

I first contacted your office about a year ago regarding being kept from seeing my file by some of the employees at the office at 1233 West Adams. The reason probably was the CE with Dr. Scott Kale. After several attempts to try to see it, I was finally told I could see it. However, when I went to see it, I was told the medical evidence was in Springfield. I then wrote your office about this, but I still wasn't allowed to see the entire file until late September 2002, just before the hearing. When I saw the report from the CE, I knew something had to be wrong, but I didn't know what exactly. The doctor from the CE said he performed a number of tests and exams on me, but he didnt.

Then, during the hearing, the ALJ told me I did not have several conditions I told her I believe I have. She asked if I were receiving treatment for something I was never diagnosed with - Anxiety. And when I told her the CE doctor only spent about five minutes with me, she ignored me.

Now, this happens - On Thursday, April 3, 2003 - I called the 800 number and asked where is my file. I wanted to see if the documents that I sent to the chief Administrative Law Judge in Maryland, were in my file. I was told in two letters that the documents were being sent to the Office of Hearings and Appeals in Evanston, Illinois to become part of my file. Well, I sent a total of 54 pages of evidence. I was particularly interested to learn if the copies of the medical records are in the file. There were a number of pages from the ER of Cook County Hospital, Fantus Clinic and St Mary of Nazareth Hospital ER and the Family Practice Center. Well, I found-out a few weeks ago, that all these originals were taken from a place where I thought they would be safe - my mother's room in a nursing home. I had other things there, but the only other thing that was taken was a $25 check from a drawer.

Of course before I went to see the file, I tried to call first. I called the office of Hearings and Appeals in Evanston, Thursday, April 2, and was told by a woman named Jean that the file was not there. I asked where it was and she said probably a local office. I had called the 800 number a week before and was told the file was still at the Office of Hearings and Appeals. I called the 800 number and I reached Stacy, who told me my file was at the local office I had been going to - 1233 West Adams. I tried to call the local office to see if I need an appointment to view my file there, but I could not reach anyone. I was on hold, waiting for someone to answer, for almost ten minutes. I then callled the 800 number again, actually I called back twice, but no one answer either time.

I then went to the library and e-mailed the office at 1233 W. Adams. I asked the same question - Do I need an appointment to view my file? I asked for an answer before Monday. Otherwise, I would just come into the office, which is what I did since I did not receive an answer.

I went to the clerk who asked my SSN. She typed it in the computer and told me to have a seat. She did not say my file wasn't there. A few minutes later, another woman joined her. I was told this woman was a supervisor, and she would look for my file. I sat down again.

Ms. Olney returned a few minutes later and said my file wasn't there, but they would order it. I asked how long would it take. She said she didn't know. They wanted to file my request for an appeal there. I decided not to because of the problems I had with them in the past - the mail should be better.

Ms. Olney also said that she did receive my e-mail, but because it did not have a SSN or an address on it, she couldn't respond. Why does she need identifying information to answer such a general question? - Do I need an appointment to view my file? - Why couldn't someone just answer the question by e-mail instead of having me come there for nothing?

After I left, I went to the library and called the 800 number. I reached a Ms. Zula or Zula, I could barely hear her. I asked her to send me a copy of the decision. I tried to ask how long it would take. She said she didn't know. She said she would have to request it from the local office. I asked which local office. She said where the file is. I said that's the point, I'm trying to find-out where the file is. After tap dancing around the question, she finally said it was at 1233 W. Adams. I told her I just came from there and they told me it wasn't there. She said maybe it's in transit from the hearing office to the office on Adams. I told her about the previous phone calls. I told her it's been in transit for about 50 days then. I told her not to make excuses for the people at 1233 W. Adams. She got mad and hung-up.

Where is my file?  That's all  I wanted to know. This doesn't seem to be a big deal to me. What's up?

I don't think this is a co-incidence - about eight hours before this visit to the office on Adams, my bags were taken, literally, right from under me. They carried just about all my personal things. One bag contained mostly papers and some personal stuff. The other mostly medication and food. The one with the papers had the letter/decision from the ALJ in it. It also had my 21-page response to her decision, my copy of it, large envelopes, stamps and additional evidence. I had a feeling someone didn't want me to respond to this decision, but I didn't think that didn't want it to happen bad enough to steal my things. I told the woman on the phone Monday that all I need is the decision and I can write the 21-page answer again. However, the additional evidence I had were copies of original letters that were also in one of those bags. Therefore, I can't get that back. Regardless, I'll do the best I can. No big deal.

I'm sure these 21-pages and my planning to go to the SSA Office today were the reason this happened. There's usually not a strong man for the possessions of a bag lady, even among other homeless people.

strong man for the possessions of a bag lady, even among other homeless people.

Also, I went to the SSA's website to get the sections of the law I also had in one of the bags and wanted to include in my case. However, when I tried to find the particular sections I had before, there was something else there. A story had replaced the law I was using. It had a case similar to my situation - a 36 year old man and a impairment of Listing 1.04. It said that the ALJ could essentially do whatever she when judging the evidence. I thought this was interesting because the law I was using was that the <u>ALJ failed to consider what I told her and what I showed her and based her entire decision on questionable medical evidence.</u> I'll keep tyring to find the relavant law in my case. Although, I went right to it the last time I got it.

In conclusion, I'm just one person. And it seems I'm fighting against most of the people in the city. I guess the reason the people with this real estate scam are so against my getting disability benefits is it would mean I have medical problems that I could say someone caused. Well, they know they caused them, so I guess they're doing all this to cover everything up. If I had been treated for High Blood Pressure when it was first noticed in July 1998, I'm sure I wouldn't have Congestive Heart Failure now.

I decided to add this little bit on because they keep trying to intimidate me. Also, one of the things I had in my response was that someone had been threatening to kill me. I figured since I had told Sallie Mae about it, they couldn't do it as obviously as they were threatening me. I then notice they were trying to do it covertly; such as blaming me, for instance, for not going for treatment. This would be very convenient in case of my untimely, natural death. Also, before they would not let me get the medication I needed.

Also, in those bags that were stolen was medication I waited weeks to get by mail. Even though I know they weren't the perfect medication, they were doing enough to keep my heart from clogging-up until I could get the right medication I need.

Sincerely,

Louise Davenport
P.O. Box 7517, Chicago, IL 60680

# Re: your message

Thursday, April 10, 2003 12:17 PM
From: "^OIG Hotline" OIG.Hotline@ssa.gov
To: "'louport35@yahoo.com'" <louport35@yahoo.com>

> Social Security Administration
> Office of the Inspector General
> Allegation Management Division

The Social Security Administration (SSA), Office of the Inspector General
(OIG), Allegation Management Division (AMD) has received your recent
Internet communication.

We will review all information carefully and determine the most appropriate
course of action. We treat all allegations in a confidential manner and we
will do our best to safeguard your identity.

Please be assured that the SSA/OIG/AMD will take appropriate action on the
allegation; however, our office will not be able to provide you with any
information as to the action taken. Privacy and law enforcement concerns
prohibit OIG and the AMD, in general, from disclosing information from its
systems of records to third parties, including the individual who made the
original allegation. Often, this is a source of some frustration to those
who contact us, but it is unavoidable in light of the Privacy Act (5 U.S.C.
§552a) and the regulations promulgated thereunder. If we were to provide
information pertaining to the subject of the allegation, he or she might
then have grounds to seek possible criminal and civil sanctions against OIG
and its employees. For this and other reasons, it is the strict policy of
the OIG that once we receive an allegation of fraud or other misconduct, no
information concerning the allegation may be released to any third party.
Individuals named in allegations received by the Hotline are entitled to the
same privacy rights that you or any other citizen might expect from us if
someone were to allege that you had committed fraud.

Our website www.ssa.gov/oig/hotline/index.htm offers guidelines for
reporting fraud and provides links to other websites where you can report
Medicare and Medicaid fraud or matters involving identity theft.

If you have more information concerning this or any other allegation, please
contact the Allegation Management Division by telephone, FAX, mail, or the
Internet as follows:

Telephone: 1-800 269-0271        FAX: 410 597-0118

Mailing Address:  Allegation Management Division
                  P.O. Box 17768
                  Baltimore MD 21235

Fraud reporting form: www.ssa.gov/oig/public_fraud_reporting/index.htm


Thank you for bringing this matter to our attention.

_Exhibit I_

about:blank

35 of 66

6/11/2008

## List of Bags,Documents and canes Stolen by ID Thieves

September 24, 2007 - two bags stolen from bushes at Harrison and Wacker. Yellow Tote bag - mainly personal belongings including medication. Dark Green bag contents included documents that can be reproduced and toiletries Several days later, after I filed police report, the bags reappeared. Most items intact.

September 10, 2007 - my daughter finally told me when I asked that she was forced to throw away the items I'd given her to keep. This included all the original documents from my Initial ✕ SSA applications filings and the correspondence from them through the decision in federal court 03-CV-9301.

August 14, 2007 - after another trip to the federal court clerk's office this time to file my answer to the defendant's motion, I was again arrested by the same police officers, in the same place for the same offense as on July 26, 2007. I was also separated from my bags again. I was only detained a few hours this time, and I was given an I-bond. I later returned to the area where I was arrested and found my bags in the spot where I was arrested.

July 26, 2007 - Chicago Police 1st District -18th and State - all three bags taken by the Chicago Police Dept. I was given a receipt which said that the bags were "disposed of" because they "contained rotting food." They actually contained all of my personal belongings, which included medication and originals plus copies of documents related to the RE scam/ID Theft. They also contained other "important documents," including medical/treatment records and documents related to the juvenile appeals case.

February 22, 2007 - From the corner of 63rd and Cottage Grove. Guy offered to watch the bags while I went up to the CTA Station. I returned and the gray bag, with wheels was gone.

February 18, 2007 - small, blue, plastic Walgreen's bag, which contained all the documents related to my brief for case #06-2962, In Re: LBD. I had been working on the brief on train. These documents included handwritten notes from the court record and transcript, at least 20 copies of court decisions, that were to be used as citations, a draft/Notes and outline of my brief,statutes and acts relevant to my case and an ID theft affidavit with attachments.

February 10, 2006 - small black shoulder bag - from alley on Chicago Avenue and Waller - contained documents regarding RE scam/Identity Theft; medical care, etc. Large bag with wheels contained mainly clothes and food.

November 26, 2004, a really big bag was stolen from outside a Church near 48th and Michigan. Among the contents of the bag were clothes and nine bottles of unopened eye drops.

June 2004 - After my mother died while at Mayfield Care Center, the people there gave my mother's oldest daughter documents that I left there with my mother. These documents include copies of letters I'd sent on mine and my mother's behalf and copies of receipts, particularly for the insurance premium payments.

⚡January 24, 2004 - My extra large backpack was stolen from the Aldi at 3988 W. Madison Chicago, IL . It contained all the documents related to my SSA Disability claims; originals and copies; prescription and over-the-counter medication - metoprolol, spironolactone, low-dose aspirin, accupril, Co-Q-10, EPA fish oil, chromium, cranberry juice soft gels; a glucose meter and other items - stolen from CTA train. Filed police report.

*Exhibit J (1)*

December 9, 2003 - second cane bought at CVS Pharmacy stolen from CTA train. Reported it to CTA Lost and Found. Never returned.
November 30, 2003 - cane given to me in the ER of Stroger Hospital Dec. 18, 2003, stolen from CTA train.

September 2003 - Bag stolen from Garfield park after woman offered to help me carry the bags and I accepted. Guy then came and took the one she thought contained documents.

May 14, 2003 - bag containing medication - accupril, spironolactone, low-dose aspirin. Glucose meter with accessories; and other items stolen from CTA train. Filed police report.

April 7, 2003 - bag containing documents for my Social Security Disability case before the Appeals Council; medications - Atenolol, spironolactone and low dose aspirin; and other items stolen from CTA train. Filed police report.

**Certification**
 As a party in the actions mentioned above, I, Louise Davenport, have firsthand knowledge of the events, documents and other events described herein and I can, therefore, attest, under penalty of perjury, that this is a true, accurate, and authentic account of each event and/or document described.

Signed: *Louise Davenport*

Louise Davenport
            This 25 Day of July    2008

**To Appeals Council**

Contents Page

# of Pages ..........................**Document**
  7.............................................Statement - Handwritten - Not in file
  6.............................................Discussion Rebuttal - In file
  2.............................................Findings Rebuttal - In File
  3.............................................Treatment Attempts - In File
  2.............................................Additional Limitations - In File
  2.............................................Patient Instructions- HBP - In File
  4.............................................Heart Profiler - CHF- In file
  2.............................................36-Hour E.R. Waiting Area Visit - In File
  1.............................................Prescription from Dr. Ko - In File
  1.............................................Record of Visit to Dr. Ko - In File
  2.............................................CHF info. American Clg. of Phys - In File
  2.............................................CHF info. from Family Practice Notebook - www.fpnotebook.com
  1.............................................Treatment History - in file
  1.............................................Letter from R. Rothstein - in file
  1.............................................R.A. Info. - Cornell University - in file
  3.............................................Authorizations to Release Information
  3.............................................E-mail to Inspector General - Not in file
  1.............................................Reference Page - Not in file

44 pages

Social Security Administration
## OFFICE OF HEARINGS AND APPEALS

## ORDER OF APPEALS COUNCIL

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability |
| | Disability Insurance Benefits |
| Louise Davenport | Supplemental Security Income |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

The Appeals Council has received additional evidence which it is making part of the record.
That evidence consists of the following exhibits:


Exhibit AC-1    Discharge instructions dated December 13, 2002
                from Cook Co. Bureau of Health Services.

Exhibit AC-2    Prescription pad notes dated 2/4/03 and an
                undated appointment note from Lawndale
                Christian Health Center.


Date:    OCT 2 7 2003


CLAIM FILE


Exhibit K (2)

**Date:**    Wed, 10 Sep 2003 14:43:00 -0700 (PDT)

**From:**    "Louise Davenport" <louport35@yahoo.com>    Add to Address Book    Add Mobile Alert

**Subject:**    Social Security Disability Claim Help

**To:**    dick@durbin.senate.gov

Dear Senator Durbin:

Recently, I read that being homeless meets the definition for the Social Security Administration of a "dire need." I also read that, if asked by a U.S. Congressman, the disability claim of a person who has a "dire need" could be reviewed sooner. Well, for the last 21 months I've been sleeping first in a car, then on public trains, now on park benches. I guess this qualifys.

Furthermore, I would file Chapter 7 Bankruptcy, except, I can't afford the court fees. I have no income. For the past two years, I've been mainly "living off" credit cards that are all just about maxed out and loans from my mother. It may also be helpful for you to know that I have a Bacherlor's Degree courtesy of the federal government. Of couse, I am telling you this because I owe thousands in student loans. I had hoped that by filing for disability, I could finally get the proper medical treatment I need, then be able to go on with my life. However, I'm wondering if I'll even be alive when my claim is decided. I first filed my disability claim almost 26 months ago, and it has now been appealed to the Appeals Council, where it is waiting to be reviewed.

I'm currently residing on park benches in Chicago. However, it is now about to get cold here again. Since we (my mother is still trapped in a nursing home) still don't have a home, I'm looking at spending another winter in the streets. The problem with this is that the cold makes my medical conditions worse. It seems to make my heart jump. I have Angina, High Blood Pressure, Congestive Heart Failure (NYHA Class IIIb) and Diabetes. I also have Rheumatoid Arthritis, which also seems to get worse when it's cold; I get stiffer in more places.

I was encouraged to write by a person who a similar problem with the length of the appeal process for disability claims with the Social Security Administration. Yes, I too wonder why it takes so long. However, other than writing congressmen to tell them how desperate our individual situations are, there apparently is nothing we can do other than wait and hope we don't die before our claims are decided. Is it possible you could ask the Appeals Council to speed up the review of my claim?

Thank you.

Sincerely,

Louise Davenport
P.O. Box 7517
Chicago, IL 60680
louport35@yahoo.com

*Exhibit L*

40 of 66

# I-2-1-95. Exhibit – Critical Request Evaluation Sheet

Last Update: 9/28/05 (Transmittal I-2-67)

**Critical Request Evaluation Sheet**

| CLAIMANT'S NAME (Last, First) | SSN | REQUESTOR/SOURCE |
|---|---|---|
| REQUESTOR'S ADDRESS | REQUESTOR'S TELEPHONE NO. | RELATION TO CLAIMANT DATE OF REQUEST |

**HOW WAS CRITICAL REQUEST RECEIVED?**
- Written statement submitted. [Letter or statement attached.]
- Telephone contact received by _____ (employee). [RC completed/attached.]
- Other: _____

**ALLEGED CRITICAL SITUATION** (Check any and all that apply):
1. ___ Terminal Illness **[TERI]**—FLAG with Form SSA-2200
   - o Military service disability claim—FLAG with MSDC flag found in I-2-1-96
   - o AIDS
   - o Hospice care [may verify through servicing Field Office.]
   - o Medical condition that cannot be reversed and is expected to end in death.
2. ✓ Without and unable to obtain food, medicine, or shelter **[DIRE NEED]**
   - o Lack of food/shelter
   - o Lack of necessary medical care/medications
   - o Foreclosure or eviction
   - o Other:
   
   _____
   - o ___ Verified with servicing Field Office (FO) or other source:
      - ▪ Income of any kind/source? Yes/No
      
        _____
      - ▪ Receiving any aid from the state or federal government? (Workers' comp, TANF, food stamps, WIC, Medicare, Medicaid, veterans' benefits, etc.)? Yes/No _____
      - ▪ Dependents: _____
      - ▪ Obligations/Expenses/Debts:
      
        _____
        _____

3. ___ Suicidal or ___ Homicidal **[SUICIDAL/HOMICIDAL]**. See I-2-1-37. If violent, inform FO or other case handlers.

DESIGNATOR: _____ [HOCALJ, HOD, GS, ALJ] (Circle one)
DATE: _____
- ENTERED INTO HO DATA SYSTEM (date of designation, type of critical case)
- CLAIM FILE FLAGGED AS CRITICAL CASE

*Exhibit M*

4/06 66

| | |
|---|---|
| **Date:** | Tue, 25 Nov 2003 11:40:16 -0800 (PST) |
| **From:** | "Louise Davenport" <louport35@yahoo.com>  Add to Address Book   Add Mobile Alert |
| **Subject:** | I'm still having trouble viewing my file |
| **To:** | oig.hotline@ssa.gov                    *VIA EMAIL* |

November 25, 2003

Dear Inspector General Huse,

I am currently in the process of filing a lawsuit against the SSA commissioner in the last step of the SSA Disability process. I was told in filing my case, to tell what the problem is and ask for something in return. Well, I'm definitely considering adding this problem to my case - pain and suffering - from the stress and frustration of unnecessarily being denied access to my file repeately by SSA employees. It took over a year for me to finally be able to see my file the first time in September 2002, after I tried a number of times to see it. The problem appeared to be the blatanty false medical report from the doctor who performed the CE. At the time, he told me that he would tell the state that he did not know what was wrong with me; I needed more tests. Instead he told them of a number of results he got from a doctor who he never performed on me.

Now what is the reason I'm being kept from seeing the file this time? Is it my trip to the ER in Dec. 2002, when I was told I had Congestive Heart Failure and treated for systemic edema with IV Lasix? I predicted that my records would not show why I was there. When I was discharged, I was given instructions about HBP. I was given nothing regarding CHF. Or am I being kept from my file because of the 44 pages of documents I sent to the Appeals Council to become part of my file, are not in there?

On Monday, Nov. 17, after making an appointment Nov. 12 to view my file, I arrived at the OHA office in Evanston. When I arrived, I was told that my file was not there. The woman, Pam, would not say where it was. She just said it wasn't there. I then left to go to the central district office at 1233 West Adams, where I originally filed my claim. Before I got on the train, I called the SSA's 800 number again. I had originally called last week and spoke with Mrs. Branch, who told me my file was in the OHA office in Evanston. She also gave me the number to this office when I told her I wanted to view the file. On this second occasion, I spoke with a woman named Claudia. She also told me my file was here in Evanston, in the office I just left. I asked her for the number to the Inspector General's Fraud Hotline. She gave it to me after a while. I then called and I spoke with Program Specialist 75. He only took the information from today. So this other information, which I think is relevant, was left out. I also told him this was at least the third time I've had contact with this office about this same problem - SSA employees preventing my viewing my file. I then told him I was going back there and I asked who should I speak with there. He would not give me a name. He just said, "Ask for the manager."

I then went back there and asked to speak with a manager. I asked this of Pam, who came out as I arrived. She asked if I needed something else and I told her. This was at about 12:02 pm. She supposedly went to find the manager. I waited, patiently. At about 12:40 pm, I went to the desk and asked a different woman, who left and quickly returned. She told me someone would be out to speak with me. I then waited about 10 minutes and a woman, Ms. Smyrniotis, came out. She said she was the group manager when I asked who she was. She was defensive when I told her the problem. She said a number of times my file is not there. She didn't say where it was or offer any explanation. She just said it wasn't there. I then asked her to call SSA's 800 number and ask them why they keep telling me my file is there, if it's not.

She left again and soon returned with a thin, brown folder and a different attitude. This time she apologized and said that the problem was in the codes. She showed me some letters and some numbers that supposedly represent this office. She said that my file was closed after the unfavorable decision of the ALJ in February. Both women emphasized the words "unfavorable decision" a number of times. She said that the people at the SSA are reading the queries wrong. I asked if this included the office manager at 1233 W. Adams, who in April also told me my file was in this OHA office. She didn't answer that. She then said that my file was sent to Springfield VA, to a place she called the "caves." She offered to recall it and have it sent to the district office on Adams. She asked for some information so I can be notified when my file arrived. I gave her my e-mail and I told her she could also use the p.o box, in response to her question. She also told me that a copy of my file is in the field office at 2927 W. Lawrence in Chicago. I told her I didn't know why a copy of my file would be there, particularly, since I've never been there. She ignored this and I left. And I'm not interested in going to this office because it is inconvenient for me.

I still want to see my file before I file my suit in federal court. I know I can ask the judge to make your employees make my file available to me. However, they're suppose to do this anyway. The judge shouldn't have to tell them to let me see my file. And I shouldn't keep having this problem.

*Exhibit N*                                                         42 of 66

**Date:** Tue, 1 Mar 2005 12:50:50 -0800 (PST)

**From:** "Louise Davenport" <louport35@yahoo.com>  Add to Address Book  Add Mobile Alert

**Subject:** 03-CV-9301- I have not received the judge's order

**To:** michael_dobbins@ilnd.uscourts.gov                                      *VIA EMAIL*

**CC:** gwen_rosegay@ilnd.uscourts.gov

Dear Mr. Dobbins,

I was told by Gwen Rosegay that I could request a duplicate copy of Judge Brown's order that was sent to my p.o. box Feb. 1, 2005, if I didn't receive it. Well, I didn't receive it. I may receive it now since the **third change of address form that I completed at the post office was finally processed correctly**. It supposedly became effective February 16, 2005. Although I assume if you use the new address below, I'll probably get it as well.

   Since I had <u>not</u> received the order, I thought I could see it by viewing my file. On Feb. 25, I looked through the case file, but the report was not in there. I asked a clerk if it was on the computer. He said yes. However, when he tried to access the document, it wouldn't come on the screen. He told me to come back Monday and that probably should be fixed. He was, however, able to give me a copy of the "docket entry text," which said I have 10 days from date of service to file any objections. OK. Since I have not receive this report, I guess I haven't been served. Although I am concerned that since the case was remanded to "the Commissioner for further proceedings," I may not have as much time as I'll need to prepare or do what is required in the report. In any event, could you please send the report ASAP. If it would be easier for you to email it to me, I would accept it that way.

Sincerely,

Louise Davenport

Mail to:
Louise Davenport
~~General Delivery~~
~~433 West Harrison Street.~~
~~Chicago, Illinois 60699~~
e-mail: louport35@yahoo.

*Exhibit O(1)*

| | | 07/20/2004) |
|---|---|---|
| 07/19/2004 | 24 | MOTION by plaintiff for summary judgment . (lc) (Entered: 07/20/2004) |
| 07/19/2004 | 25 | ANSWER by plaintiff to defendant's motion for summary judgment [19-1] (Attachment). (lc) (Entered: 07/20/2004) |
| 02/01/2005 | 26 | MINUTE entry before Judge Geraldine Soat Brown : Report and recommendation to Hon. Joan H. Lefkow submitted herewith. This court respectfully recommends that the Commissioner's motion for summary judgment be denied, plaintiff's motion for summary judgment be granted, and the case be remanded to the Commissioner for further proceedings consistent with this opinion. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(b). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this action having been concluded, the case is returned to the assigned judge. Notices mailed by judge's staff. (jmm, ) (Entered: 02/03/2005) |
| 02/01/2005 | 27 | REPORT AND RECOMMENDATIONS regarding motion for summary judgment 24 , motion for summary judgment 19 . Objections to R&R due by 2/15/2005. Signed by Judge Joan H. Lefkow on 2/1/2005. (jmm, ) Modified on 1/27/2006 (aew, ). (Entered: 02/03/2005) |
| 02/24/2005 | 28 | MINUTE entry before Judge Joan H. Lefkow : Defendant's motion for summary judgment 19 is denied; plaintiff's motion for summary judgment 24 is granted; and the case is remanded to the Commissioner of Social Security for further proceedings consistend with the court's findings and conclusions as set out in the report and recommendation. Civil case terminated. Mailed notice (jmm, ) (Entered: 02/28/2005) |
| 02/24/2005 | 29 | ENTERED JUDGMENT Signed by Judge Joan H. Lefkow on 2/24/2005. Mailed notice (jmm, ) (Entered: 02/28/2005) |
| 03/14/2005 | 30 | MOTION by Plaintiff for in hand service by the court and MOTION for enlargement of time to prepare proceedings (gma, ) (Entered: 03/15/2005) |
| 03/14/2005 | 31 | NOTICE of Motion by Louise Davenport for presentment of MOTION by Plaintiff for in hand service by the court and MOTION for enlargement of time to prepare proceedings 30 before Honorable Geraldine Soat Brown on 3/18/2005 at 09:45 AM. (gma, ) (Entered: 03/15/2005) |
| 03/14/2005 | 32 | STATEMENT by Plaintiff Louise Davenport in support of MOTION by Plaintiff for in hand service by the court and MOTION for enlargement of time to prepare proceedings 30 (gma, ) Modified on 8/22/2006 (mjc, ). (Entered: 03/15/2005) |

Exhibit O (2)

Chief Administrative Law Judge
Office of Hearings and Appeals
SOCIAL SECURITY ADMINISTRATION
5107 Leesburg Pike
Falls Church, VA 22041-3255

Louise Davenport
General Delivery
Chicago, IL 60699

May 13, 2005

Re: Administrative Law Judge Cynthia Bretthauer, ALJ Hearing of Oct. 2, 2002
and claimant                    SSN:

Dear Chief Administrative Law Judge,

   In December 2002, I sent you three letters regarding my Administrative Law Judge Hearing which
was held October 2, 2002. The first letter detailed most of the issues I had with the ALJ. The other
two were about the main issue I had with my case in general - the unreliability of the medical
evidence. I did not receive a response to the first letter. However, I did receive a reply from the
Deputy Chief Administrative Law Judge to the two subsequent letters. The replies both said basically
the same thing - that there is a "built-in" complaint system in the appeals process. I was told I could
put my complaint in my appeals if I was planning to appeal anyway. Although the letters said I could
still file the complaint if I wanted but, it would be a duplication if I was going to appeal. I then decided
to just make the unfair treatment or ALJ Bias as I called it on the application for review to the Appeal
Council, the basis of my appeal. Although I used the same information in my case in federal court, I
referred to the unfair treatment or ALJ bias as "errors."
   In filing these appeals, I was under the impression that what I wrote would be read; someone
would notice what I was saying. Since the Appeals Council declined to review my case, maybe they
did not see what I wrote. On the other hand, the documents I filed in federal court could have been
seen by three judges - Lefkow, Brown and Kocoras - and/or their staffs. Although the magistrate
judge supposedly found in my favor, I am not satisfied with this decision. The problem is Judge
Brown did essentially the same thing as the ALJ - completely ignored the glaring problems I had with
the medical evidence in general and the consultative examination with Dr. Kale in particular. I'm
baffled at the constant use of this doctor's report of an exam that I have said numerous times is
FALSE. THE TESTS FOR WHICH HE REPORTED RESULTS WERE NEVER PERFORMED ON
ME! I have no reason to say he didn't if he did. The fact is HE DIDN'T EXAMINE ME as
he reported. He only spent about five minutes in the room with me, and in that short period of time
could not have performed all these tests. I haven't said this about any of the other doctors. Although I
have said their methods; opinions, tests are flawed.
   I've said this numerous times, and nobody seems to care. In addition to filing a complaint with
the Illinois Department of Professional Regulations, I sent a copy of the complaint to the
Regional Manager of the Social Security Administration. Although in his letter (which is in the file) he
says an investigation would be conducted, I never heard from him or anyone else about this
investigation.
   Just because the magistrate judge ruled in favor of my cross motion for summary judgment, does
not mean this point is irrelevant. This was the basis of my case, and it could have been the difference
between what I asked for - an outright reversal and what I received - a remand back to the
commissioner for further proceedings. Although it's been almost 3 1/2 months since this decision was
made, I still have not received notice of these "further proceedings by the Commissioner." I assume
I'm invited.
   The problems with the medical evidence is discussed in the rebuttal to the ALJ Discussion I sent to
the AC, in my original complaint and in Plaintiff's Answer to Defendant's Motion for Summary
Judgment. Although erroneously, it is mentioned in the transcript of the ALJ hearing. However, I
answered that in an affidavit objecting to the use of the transcript. Although I know you can easily get
these documents, I'm enclosing copies of them. I'm also enclosing a copy of the Magistrate judge's
report and recommendation so that you can see the similarities in it and in the ALJ's Decision and the

*Exhibit P(1)*                                                      45 of 66

repeated use of Dr. Kale's report.

You may be wondering why I'm sending you this now. Well, two reasons. First, I may be wrong, but I think I read somewhere that I could still file an Unfair Treatment Complaint against the ALJ even after I filed the appeals. Well, this is it! I still feel that what I'm saying has not been heard.

Second, since I believe the problems with my case are a direct result of the identity theft/real estate scam involving my mother and me, I thought I should send this to show the pervasiveness of this crime.

If you have any questions, please try contacting me at the address above.

Sincerely,


Louise Davenport

Enclosures - 75 pgs.      *OMITTED*
Magistrate Judge's Report and Recommendation -29 pgs
Plaintiff Answer to Defendant's Motion for Summary Judgment - 15 pgs
Affidavit in Support of Motion - 6 pgs.
Plaintiff's Complaint - 15 pgs
"Discussion Rebuttal" - 6 pgs.
"ALJ Findings, Answer" - 2 pgs.
Additional Limitations - 2 pgs.

<u>COPY</u>

SSA, Office of Hearing and Appeals          Louise Davenport
1033 University Place                       General Delivery
Evanston, IL 60201                          433 W. Harrison Street
                                            Chicago, IL 60699
September 27, 2005                          Email:louport35@netscape.net

Re: Remand of SSA Case 03-cv-9301

To Whom It May Concern,

Since I have not heard from you regarding the remand of my SSA case to an ALJ, I
decided to send these documents to you. Since there was only one RFC done, that
during the initial determination, I'm sending information so that another one can be
done. I went to your website and I printed forms that I completed before. However,
these forms related to my current treatment and symptoms. I think I've enclosed most of
those that may be necessary. If I need to complete others, please send them as soon
as possible. Thank you.

Also please note new mailing address above.

Sincerely,


Louise Davenport

Enclosed please find:    *OMITTED*
1. Completed, Disability Report Appeal - 8 pgs
2. Claimant's Medical Treatment - 2 pgs
3. Claimant's Medications - 2
4. Copy of EKG from May 2005
5. Copy of explanation from Family Practice Notebook
6. Copy of first page of Pharmacy Instructions from some of my current medications - 5
7. Copies of reports given to me by doctors- Eye Clinic -7, ASC - 2 - Total -7
8. Authorization to Release forms, signed - 10
Total Enclosed - 38 pages

*Exhibit Q*

**Date:**  Sat, 15 Apr 2006 14:29:38 -0700 (PDT)

**From:**  "Louise Davenport" <louport35@yahoo.com>  📧 Add to Address Book   📱 Add Mobile Alert

**Subject:**  Letter sent recently

**To:**  s3g-f5.chicago.oha.ro@ssa.gov

To Whom It May Concern

I went to pick-up mail from the post office Friday, April 14, 2006. I was given two pieces of mail. One of which was from SSA OHA 200 West Adams. I took both letters and left the post office. I have did not have both letter long. The one from you was quickly stolen from the bag I had it in. I had not opened either letter so I did not know what the letter contained. However, I'm wondering if the letter had any information for which there is a deadline. If so, I obviously need this letter sent to me again.

  I'm also planning to call Monday to see if I can get this information by phone. If the deadline is approaching soon, I may have to come to your office to pick it up.

You can try replying to this email. However, I noticed there seems to be a "block" on incoming messages. Therefore, as I said I will try to call your officer Monday afternoon to see if I can speak with someone about this letter.
Thank you.

Sincerely,


Louise Davenport
General Delivery - 433 W. Harrison
Chicago, IL 60699

*Exhibit R (1)*

48 of 66



**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Louise Davenport

Office of Hearings and Appeals
9th Floor
200 West Adams Street
Chicago, IL 60606
Tel: (312)886-5552 / Fax: (312)886-3504

April 6, 2006

Louise Davenport
General Delivery
433 W. Harrison
Chicago, IL 60607

## NOTICE OF HEARING

I have scheduled your hearing for:

**Day:** Wednesday      **Date:** May 3, 2006      **Time:** 2:45 PM

**Room:**      **Address:** OHA Chicago S Ste. 900
200 West Adams St.
Suite 900
Chicago, IL 60606

### It Is Important That You Come To Your Hearing

I have set aside this time to hear your case. If you do not appear at the hearing and I do not find that you have good cause for failing to appear, I may **dismiss** your request for hearing. I may do so without giving you further notice.

### Complete The Enclosed Form

Please complete and return the enclosed acknowledgment form to let me know you received this notice. Use the enclosed envelope to return the form to me within 5 days of the date you receive this notice. We assume you got this notice 5 days after the date on it unless you show us that you did not get it within the 5-day period.

Exhibit R (2)

49 06 66

## Documents deleted and other obstacles to filing this complaint

Details of an incident with an SSA employee on April 27, 2006 at the SSA OHA at 200 W. Adams in Chicago. Specifically her treatment of me regarding my file. Details of this incident before the May 2, 2006 hearing were deleted from files "Important dates" and "April 2006 Journal"in my Email Account

I immediately wrote a letter to ALJ Shinitzky telling him that I was upset that the evidence and other documents I sent to the SSA OHA in Evanston Illinois in September 2005 (See Exhibit    ), had not been included in my file and I had no choice except to bring alternate evidence to the hearing May 3rd since I did not want another delay. This letter was also deleted.

RD numbers (police report numbers) for the theft of the bags (See Exhibit    ) in September 2007 from Important dates and Journal were deleted. Also, other police report numbers from other occasions when I reported incidents.

Details of the May 3, 2006 hearing regarding what ALJ Shinitzky said, in particular, the memo that he dictated while I was there. In it, he ordered three more CEs including one for a stress test. I had a hard copy of this and was able to retype it.

The letter I sent to the Evanston OHA in September 2005 was deleted. Since this letter was included as an exhibit in the 2007 Mandamus case, I was able to get a copy from the court file to replace the one that was deleted from my Email Account.

Details of a phone call with the guy from the SSA's 800 number in early December 2007 were deleted from my Journal for that month. He told me that my case was with the AC and that it would take an average of 7.6 months for them to decide my case. He also tried to discourage me from filing this action (Yes, I was supposed to have filed it months ago).

They wanted the later letters from (2004) to the SSA's OIG. All the letters to this officer were in one document and I was trying to print it on March 12, 2008 since I didn't have it any where else. However, what came out of the printer were the ones I already had, the old ones from 2003. I came back the next day to try to reprint the two from 2004 that I tried to get the day before but now, the entire file is gone.

They deleted a letter to the SSA's OIG - "About Theft" from 2003. That's now missing. This document reappeared. However, now it has text from one of the other messages I sent to the OIG. It is not the right date either.

Although they may not have done this because I was planning to file this Bivens Action, I'm sure they my ID thieves are the reason I currently do not have a mailing address. This is because of the sudden cancellation of my general delivery service by the main U.S. post office here in Chicago (see attached letter).
 I believe that my ID thieves orchestrated this so that I would not have a mailing address when my name was added to the waiting list for Section 8, which I applied for in April 2008. They also just keep trying to make me rent a P.O. Box even though I do not have any income and I cannot afford the rental fee. This is the reason I signed up for general delivery in the first place. Also, my not having an address benefits them in the property theft somehow.
 Additionally, this was done because their having someone tell me years ago that I could not file a complaint in court without an address, prevented me from filing a complaint after we were evicted and most of our belongings were kept by the landlord at 3327 W. Monroe, Chicago. I guess they figured I would be discouraged and not file this complaint. Well, I'm going to try it anyhow.

Exhibit S  (1)



**UNITED STATES**
**POSTAL SERVICE**

April 2, 2008

To: General Delivery Service Customers

From: Loretta Wilkins, Manager Cardiss Collins Postal Store

General delivery service is a 30-day limited service provided at the Cardiss Collins Post Office for customers that are temporarily without a mail delivery address. Postal Service records indicate that you have exceeded the 30 days allowed for this service.

If you would like to continue receiving your mail at Cardiss Collins, we recommend you rent a post office box for the low fee of $20 ($18 for six months box rental + $2 key fee) or $38 ($36 for one year box rental + $2 key fee). All general delivery customers on our list need only bring a state issued picture identification to open a box here at Cardiss Collins. If you now have a permanent mailing address please submit a change of address card If you choose to rent a box at another station please have two forms of identification: one state issued picture identification and the other with your current address.

This is an official notice that after: May 31, 2008 all mail addressed to general delivery will be **returned to sender** and will no longer be available for pick-up. Please make arrangements regarding your mail to prevent any disruption in your mail delivery.

*Exhibit 8 (2)*                                                    5/06/66

Commissioner Jo Anne B. Barnhart
Social Security Administration
6401 Security Blvd.
Baltimore, MD 21235-

Louise Davenport
~~General Delivery~~
~~433 W. Harrison Street~~
Chicago, IL 60680
louport35@netscape.net

June 8, 2006

Re: Continuing unnecessary delays in the SSA's disability determination process

Dear Commissioner Barnhart,

I was glad to read recently about the new reforms in the SSA disability process. I hope that will expedite most claims. However, these reforms obviously don't apply to pending cases such as mine. Next month will mark the fifth year anniversary of the filing of my claim. Although I think I've been extremely patient, there have been a number of delays that seem not only unnecessary but intentional.
Examples -
   One, the decision from the magistrate judge took about seven and a half months to be made. Being that I filed my claim in federal court pro se - myself - I thought my case would be relatively easy. However, there is a local rule that sets seven and a half months as the deadline for a decision to be made. At that point, one of the parties can inquire as to why it's taking so long. In addition, I did not receive the decision for almost seven weeks after the decision was made February 1, 2005. The reason - supposedly, mail problems. Even though I sent the court my new address, and requested several times they send the decision there, I never received it. I had to resort to filing a motion asking to be served the decision in open court. Obviously that was the only way I was going to get the decision.
   Two, although I called the SSA asking to file a complaint with the Office of Inspector General the day of the first hearing in October 2002, I was convinced by the man I woke with, to wait. However, it was obvious the Administrative Law Judge(ALJ), Cynthia Bretthauer had already made up her mind since she was telling me during the hearing that I did not have Angina (coronary heart disease) or Rheumatoid Arthritis(RA) - both conditions I was arguing I have. As I said, I knew during the hearing the ALJ had already made her decision. Therefore, it should not have taken four and a half months for her to send me the decision in writing. Although that's what happened.
   Now there's this delay -
   Although I was sent a "Notice of Hearing" for May 3, 2006, when I arrived there, the ALJ Edward Shinitzky eventually told me that the case is suppose to be in Evanston with ALJ Cynthia Bretthauer. He said that this hearing was to find out where I was. I told him that either address was suppose to get my mail to me. One was the new address and mail from the old address is suppose to forward to this new address.
   He said he was going to arrange three Consultative Examinations(CE) to expedite the matter. When I asked him why I needed more CEs. He said he could do this at his discretion. Frankly, I don't feel more CEs are necessary for a number of reasons -
   First, I read something in the listings that said that you would not order tests if there's enough evidence in the record to make a decision. I believe there's enough evidence in the record so that I do not need to take any more tests. I have tried to send or help you get as much information from the 50 plus visits to doctors I've had since 1997. As I said in my complaint in federal court, it is not my fault the doctor's won't put what's wrong with me in writing. They also don't properly treat my conditions.
   Also, on May 3, when ALJ Shinitzky asked if I thought I met a listing, I responded that I thought I equaled one. I can't meet a listing because for most of my conditions the tests the listings require have never been performed. Or, as with the case of Ischemic Heart Disease - Listing 4.04, I've never received the results of the Stress Test with Thallium I took June 2004. This despite numerous attempts, including a subpoena, to get the results. Although I've had a number of tests related to cardiovascular conditions performed, I haven't received the results for most of them.
   Second, when I asked the woman who was to arrange the CEs Ms. Robinson, she told me that this is the same place - Lakeshore Medical Clinic, where I had the other two CEs in October 2001.
I was a little confused at first because when she told me that this was the place, I thought about Dr. Kale, and the CE he was suppose to perform. I started having doubts about any more CEs. During the CE with Dr. Scot Kale in October 2001, he asked me to do two exercises and he listened briefly - a few seconds - to my heart. Almost a year after this CE I found out he reported results for a number of tests, including a straight-leg-raising test and an eye exam, he never performed. I was denied access to my file by SSA employees on a number of occasions, otherwise I would have found out that Dr. Kale lied about the CE sooner.
   I was also confused that throughout the adjudication process, despite my complaining about this CE, the adjudicators continually quoted results from this report from Dr. Kale. At no point when quoting him, did they ever mentioned that I disputed his findings. The ALJ based most of her decision on this CE, and the magistrate judge just quoted the ALJ.
   I therefore am hesitant to take another CE at this same place - particularly since nothing was ever done about this CE with Dr. Kale. Although I sent a copy of the complaint I filed with the Illinois Department of Professional Regulations to the Deputy Director of the Illinois Department of Disability Determination Services and to the Regional Commissioner of SSA, I only received a letter a from the regional commissioner saying that my statements would be investigated. However, that was the only reply I received regarding that complaint. A copy of the complaint should have been in my file, but isn't. Therefore I refuse to take any more CEs at this place.
   Also, I've had over 20 visits to ophthalmologists since 2002, and since then I've been diagnosed with three conditions - Iritis, Glaucoma and now, Corneal Edema. Although I did not know what NLP meant at the time I heard the doctors talking about it, I went and looked it up. According to Wikipedia.org,  Total blindness is the complete lack of form and light perception and is clinically recorded as "NLP", an abbreviation for "no light perception".
   This term NLP is on most of the progress notes that I've received from the eye doctors. What would be the point of seeing another ophthalmologist? Since the magistrate judge ruled that the ALJ erred in not having a medical expert at the first hearing, maybe a medical expert can define this term at the next hearing. Why do I need to see another ophthalmologist? To say that there's nothing wrong with either of my eyes, maybe?

*Exhibit T (1)*

52 06 66

In addition, I absolutely refuse to talk to another psychiatrist at Lakeshore . The last one diagnosed me with adjustment disorder based on symptoms caused by my physical impairments. He also attributed statements to me that I did not make. I also, I never claimed to have a mental impairment in the first place. The ideal for me to see a psychiatrist is for someone else's benefit. Not mine.

I'm enclosing summaries of the (regular and eye) doctor visits I've compiled to show that there should be enough evidence in the record to make a decision without more bogus CEs. I'm also sending the list of documents that I submitted as evidence to the SSA on May 3, 2006. I brought a number of documents to the hearing. Although I was aware this would delay the hearing, I had no choice. The documents I sent to the SSA OHA in Evanston IL in September 2005 were not in the file when I went to view it April 28. I've enclosed a copy of that letter I sent with the documents to the Evanston office.

Finally, I'm hesitant to appear before ALJ Cynthia Bretthauer for another hearing. On May 3, 2006, ALJ Shinitzky said that the decision from the court was to remand the case back to the original ALJ. I have a number of problems with that. First, I filed an unfair hearing complaint against her because I felt she was biased. She told me during the hearing that I did not have Rheumatoid arthritis(RA) and I did not have Angina. She also told me that the positive Rheumatoid Factor test I told her was evidence of RA, was not. She also ignored me when I told her Dr. Scot Kale did not perform the tests for which he reported results.

Although the magistrate judges report did not address all the issues I raised in my original complaint, she did rule that this ALJ made errors on four points. Although, I thought that would be sufficient for an outright reversal, the magistrate Judge remanded the case to SSA. Although ALJ Shinitzky said that the court remanded the case specifically to ALJ Bretthauer, the letter from the AC says it is "remanded to the commissioner." Therefore,it should not be mandatory that my case goes to ALJ Bretthauer. During my preparation for the hearings, I saw examples of ALJ being less biased and were recused from the case. Why should my case be different?

Sincerely,


Louise Davenport

Enclosures - 22

OMITTED

Summaries of doctor visits -14
Summaries of eye doctor visits - 3
Progress notes from Eye Clinic December 2005 and April 2006 - 2
Copy of letter from Appeals Council
Letter to Evanston - OHA dated Sept. 2005
Proof for my impairments

Exhibit T(2)
about:blank

## Social Security Administration

*Typed copy of original copy*

TEH2B
PNO602

August 8, 2006

Louise Davenport
General Delivery
433 W. Harison Street
Chicago, IL 60699

Dear Ms. Davenport,

This is in response to your letter to Commissioner Barnhart concerning your claims for Supplemental Security Income (SSI) and Social Security disability benefits.

We were sorry to learn of your medical difficulties and can understand your concern. We share your desire for a prompt decision on your disability claims. We confirmed that a hearing was held before ALJ Bretthauer of the Evanston Hearing Office. You may be sure that everything is being done to obtain any needed evidence and to make a decision soon.

You may be interest to know that we have implemented some short-term enhancement to help streamline the work required to hear and decide more cases more efficiently and effectively. For example, our Office of Disability Adjudication and Review has implemented a program or early case screening and analysis by administrative law judges. Also, the future of service delivery holds even greater promises as we accelerate the use of technology such as digital recording and video teleconference hearings to increase efficiency. We will continue to look for additional measures we can take to improve our service.

If you have any questions about your claims, you may wish to contact our Chicago Social Security Office (telephone 312-353-8798). Our reps there will be glad to help you .

Sincerely

Annie White
Associate Commissioner
Office of Public Inquiries

*Note: Original stolen*
*Copy of can be found*
*( Davenport v. Barnhart 07-cv-1888 NDIL)*
*SD*

*Exhibit T (3)*

Office of the Regional
   Chief ALJ
200 West Adams Street
Suite 2901
Chicago , Illinois  60606

Louise Davenport
General Delivery - 433 W. Harrison St .
  Chicago , IL 60699
  Email: louport35@yahoo.com
SSN#

August      2006

Dear

   On August 10, 2006 I called the SSA's 800 number to check the status of my disability claim. I
was told by "Clara," who said my case "is not like the rest," to call the local office at 1233 W.
Adams .  Before she told me this, she said that it appeared that I was "awaiting a hearing decision.
I told her that couldn't be right since I had not had a hearing. .
 Well, I was not far from the SSA office, I went there. I was then told by a young blond woman that
my case had been "assigned to Judge Bretthauer." That was the only information available
according to her.
   I explained that I was told by ALJ Edwin Shitnitzky on May 3, 2006 that the hearing he
had postponed should take place in 9 -12 weeks. OK. It's now past that mark.
   I also recently wrote to Commissioner Barnhart and told her of the very frustrating and
unnecessary delays in my case. I just received a reply from the assistant commissioner. However,
it appears they're still doing it.
   What is she talking about? This...
 "It" is the intentional stalling by SSA employees of the processing of my claim, which has now
been over five years since I filed the initial application in July 2001.
 "They" are the ID thieves from Loop Mortgage Corp/State Title who have been using our names
(mine and my mother's, deceased, June 2004) in a real estate scam since 1997.
   In the letter - copy enclosed - the assistant commissioner refers to a hearing in the past tense,
even though I have not yet had the second ALJ hearing. This may me be a fictitious hearing
supposedly held by this ALJ and found in my favor. However, it will probably be determined by this
ALJ that I have the mental impairment that the ID thieves want me to have so that it will be easy to
convince people I'm delusional, particularly when it comes to what I say about them.
   I should have had a hearing on May 3, 2006 when one was scheduled because of a federal
court remand. However, they (ID thieves) again caused this hearing to be delayed by having
ALJ Shinitzky order three more consultative examinations (CEs).
   I refuse to submit to any more CEs arranged by this agency. The additional CEs were scheduled
with the same medical group where I had previous problems with the CEs from Dr. Scot Kale and
Dr. Nelson. Even though the 70 plus visits to doctors I've had over the years should provide
sufficient evidence of my impairments(list enclosed), these CEs were scheduled. Well, I refused to
keep the appointments for them. I believe they were just occasions for the ID thieves to have these
doctors - an ophthalmologist, a psychiatrist and an internist - say that I do not have the physical
problem I claim but I do have a mental problem I don't claim to have.
   Because of the ID thieves involvement, there have been numerous acts of corruption by SSA
employees in my case which include the following:

1. The ALJ Cynthia Bretthauer told me during the hearing in Sept 2002 on several occasions that I
did not have the conditions I claimed (i.e. Angina and Rheumatoid Arthritis, RA). She also refused
to invite a medical expert to the hearing who could have told her what RF>20 meant. She refused
to believe it was evidence of RA as I said.
   She based her written decision solely on the report of the consultative examination(CE) done by
Dr. Scot Kale Even though I told her in writing and during the hearing that this doctor didn't perform
most of the tests for which he reported results. She did not question me about this CE either.

Exhibit U (1)

55 of 66

In the decision from the federal magistrate judge, this case was re maned to the commissioner because of four errors this ALJ made. Yet now, this ALJ going to preside over a second hearing for me. Why?

I don't want her to conduct the second hearing. Frankly, I feel that she will do again only what the ID thieves want her to do. In other words - I don't trust her to be fair. I thought I explained that in the Unfair Treatment Complaint I filed against her. If I didn't, I think I made it clear in the letter to the commissioner, copy enclosed.

2. The Residual Functional Capacity (RFC) was also based solely on this flawed report from Dr. Kale.

And the state doctors who supposedly reviewed the medical evidence conveniently ignored the daily living questionnaires with details from me about my symptoms. Also, one said that my SOB (shortness of breath) has "no cardiac basis" although there were notations of prior history of HTN (hypertension aka High Blood Pressure) and CAD (coronary artery disease) and a diagnosis of Angina in progress notes from treating physicians.

3. Even though I repeatedly sent complaints to the OIG about SSA employees preventing me from seeing my file, this problem continued.

4. I also complained during a status hearing of this claim in federal court about the discrepancies in the transcript of the first ALJ Hearing. Quotes were attributed to me that I never made. After asking but being told that no audio recording of the hearing was available, the judge suggested I list the problems with the transcript in an affidavit. I did. copy enclosed

5. I was kept from seeing the file so I would not see the fictitious report of the CE from Dr. Scot Kale. As I said previously, he reported numerous results for tests, which he never performed. I sent a copy of the complaint I filed with the Illinois Department of Professional Regulations to the regional commissioner and the Deputy Director of the Illinois Department of Disability Determination Services. According to James Martin, there was suppose to be some type of investigation done about this CE. However, if there was, it obviously did not affect my case. There was no result of this investigation in the file, and there weren't any copies of these letters or emails in my file. In other words, there was no documentation of the many occasions I complained about the report of this CE. Is this the reason SSA employees continued to use it?

As you can see, I have a number of problems with this case , which I have raised not only in my federal case, but in letters to various officials at the SSA.The problem is no matter how much I complain, nothing seems to be done to resolve these issues. I don't see why I should have to file another case in federal court to get a fair hearing, but I'm tired of writing letters to you people.

Sincerely,

Louise Davenport

Enclosures - *OMITTED*
letter to Commissioner Barnhart - 2 pages
copy of letter in reply
copy of hearing notice for May 3, 2006
copy of affidavit regarding transcript

Exhibit U (2)

Yahoo! Mail - louport35@yahoo.com

| Sent To | Subject | Date ▾ | Size |
|---|---|---|---|
| | securitas contact info | Wed Jan 10, 2007 | 2k |
| | Libray complaint | Mon Jan 08, 2007 | 23k |
| | IMPORTANT DATES - 2007 | Mon Jan 08, 2007 | 1k |
| | notice of filing form for appeal | Mon Jan 08, 2007 | 6k |
| | night of 6-22-06 | Mon Jan 08, 2007 | 15k |
| | ✶ 2nd ssa complaint | Mon Jan 08, 2007 | 15k |
| | another tran incident | Mon Jan 08, 2007 | 1k |
| | HEALTH - DECEMBER 2006 | Mon Jan 08, 2007 | 8k |
| | HEALTH - JANUARY 2007 | Mon Jan 08, 2007 | 408b |
| | JOURNAL - DECEMBER 2006 | Sat Jan 06, 2007 | 91k |
| | January 7, 2007 | Sat Jan 06, 2007 | 824b |
| | night of 6-22-06 | Sat Jan 06, 2007 | 15k |
| | Night of March 23,2006 | Sat Jan 06, 2007 | 432b |
| | SSDI case - court review | Sat Jan 06, 2007 | 42k |
| | more ssa info | Sat Jan 06, 2007 | 23k |
| | time delayed case | Sat Jan 06, 2007 | 2k |
| | ssa disability info | Sat Jan 06, 2007 | 4k |
| | cases used in appellate court | Thu Jan 04, 2007 | 5k |
| | HEALTH - DECEMBER 2006 | Thu Jan 04, 2007 | 7k |
| | order form for Appeals ct | Thu Jan 04, 2007 | 4k |
| | notice of filing form for appeal | Thu Jan 04, 2007 | 6k |
| | checklist | Thu Jan 04, 2007 | 799b |
| | cases used in appellate court | Thu Jan 04, 2007 | 3k |
| | another case, from CA | Thu Jan 04, 2007 | 8k |
| | print out today 1-4-07 | | |

Exhibit V

57 of 66

FOR OFFICIAL USE ONLY

COM. NO. #_____
DATE REC D: _____

# COOK COUNTY
## COMMISSION ON HUMAN RIGHTS

### COMPLAINT FORM

NAME OF COMPLAINANT  Ms. Louise Davenport   TELEPHONE N/A, Email: louport35@yahoo.com or
louport35@aol.com
STREET ADDRESS General Delivery, 433 West Harrison Street
CITY Chicago
STATE Illinois    ZIP CODE 60699


NAME OF RESPONDENT  Chicago Public Library    TELEPHONE
STREET ADDRESS Harold Washington Library Center 400 South State Street,
CITY Chicago STATE Illinois  ZIP CODE 60605

Legler Branch 115 South Pulaski Chicago Illinois
Bee Branch 3647 South State Street Chicago Illinois
Austin Branch 5615 West Race Street Chicago Illinois

TYPE OF COMPLAINT (Check as many as applicable)
G EMPLOYMENT  G HOUSING
G COUNTY FACILITIES, SERVICES & PROGRAMS
G PUBLIC ACCOMMODATIONS
G CREDIT/BONDING

BASIS OF DISCRIMINATION OR HARASSMENT (Check as many as applicable)
(Physical)
G Race  G Disability or mental)  G Parental status
G Color  G National Origin  G Military Discharge Status
G Sex  G Sexual Harassment  G Source of Income
G Age (over 40)  G Sexual Orientation  G Housing Status
G Religion  G Marital Status  G Retaliation
G Ancestry  G Gender Identity

DATE DISCRIMINATION OR HARASSMENT TOOK PLACE
(List the latest date, if continuing) - February 26, 2007
month day year

THE PARTICULARS ARE (Attach extra sheets if additional space is needed):

I've been writing letters to the commissioner of the Chicago Public Library(CPL) for years with complaints about
the libraries. This was mainly due to my trying to use the computers in the library. I wrote to the commissioner a
number of times, sometimes the service would improve. Then the problems would start again. I believe this
mistreatment/harassment I receive in the library is due to a real estate scam/Identity theft that has been ruining
our lives since about May 1997.
   These problems in the libraries seem to occur mainly whenever I'm "working on something." As in legal
petitions, legal briefs, letters of complaints, etc. Lately, the perpetrators, Loop Mortgage Corp/State Title, have
been trying to use the bags that I carry with me all the time as the reason. I carry these bags because, since I'm
homeless, I have no place to put them.

That is why I told Greta Bever of the Chicago Public Library that I thought their telling me suddenly, on July 28,
2006 - I could not come into the library because I had too many bags was  again arbitrary and discriminatory. At
this time, I was working on a complaint to the Illinois Department of Professional Regulations regarding a social

*Exhibit N(1)*
about:blank

worker. Supposedly multiple bags is a safety issue because of terrorism concerns. However, I pointed out that the terrorists don't usually carry multiple bags of explosives. Just one. In reply, Ms. Bever said, "We can't keep everybody out." There was "no written policy" at this time. However, Greta Bever soon had one approved by the library board in September 2006.

After this, I just stopped going to HWL but continued visiting the neighborhood branches as usual. However, I suddenly started having problems here too.

Saturday, October 21, 2006 - Soon after arriving, I was asked to leave by the security guard. This was after the branch Manager, Ms. Morris told her to tell her to leave. I ask to speak with Ms. Morris. Eventually, she told me that there was a meeting on October 17, 2006 and they have now decided to enforce the policy enacted in September 2006 because of terrorism concerns. I told her that the policies only get enforced when I'm working on something they (my ID thieves) don't want me to work on, especially if I have to print it. I told her I have that problem at other libraries too. They have the guards try to keep me out of the library because of too many bags when the intimidation and the harassment don't work. I then said that she and the guards, and other people in the library are taking orders from my ID thieves to keep me out of the library so I don't use the computers. She told me she wasn't going to stop me from talking to anyone; she mentioned the mayor and 3-1-1. I don't know about them but I'm going to tell somebody. After finishing my session and getting my print-outs, I left.

On Thursday, December 14, 2006 - Bee Branch, 37th and State, I was denied entry into this branch of the CPL, this time by a female security guard "Giles." As I was about to go inside, she told me I could not come into the library with the bags I had. I said since when. She said since she's been here. I asked how long that's been. She said a couple of months. I told her I was last here on October 31 2006, and I did not have this problem. She tried to tell me that was the policy. I asked to see the manager and , a woman who said her name was Mrs. Reynolds came and told me that this was the policy that they just recently started enforcing a month ago because of all kinds problems in the libraries. OK.
    I then took the large bag out into the lobby. Apparently that's what they wanted me to do so they would have a chance to get any documents it contained. I asked for a copy of the policy which apparently is the same one that Ms. Morris had. I stayed in the library until I finished my computer sessions.

 On Thursday, February 22, 2007, after being in the Austin Branch of the CPL over two hours, a Security Guard, Teresa, last name unknown, told me that I had to leave Respondent's Austin Branch because I had more than two bags. I was on a computer working on a Writ of Mandamus complaint against the Social Security Administration when I was told to leave. I took my bags and sat them outside the door until I finished the session and received my print-outs. I then left the library.

On Monday, February 26, 2007, Mr. Christie, Branch Manager at the Austin Branch, and Teresa, Security Guard, again suddenly told me that I had to leave because I had too many bags. I had been in the library about five hours at this point and again I was working on a motion related to the Writ of Mandamus complaint against the SSA. I stopped arguing with them about the bags and just left and never returned.
I then filed this complaint.

Note: After sending this complaint to the commission, I was asked to send a notarized copy to them. I did. However, in February 2008, I went to their office to check the status of the complaint. I was told it was dismissed because they never received the notarized copy of the complaint I sent to them.


I declare under that the foregoing is true and correct.

Complainant's Signature                              Date


 Sworn and subscribed before me this    day of         , 2007.

Notary Public

HR2-6/04 PAGE 2 OF 2

*Exhibit W (2)*

590666
5/13/2008

## My Previous Actions Regarding ALJ Bretthauer

October 2002 - about an hour after the hearing, I called the SSA's 800 number and asked to be connected to the Inspector General's Fraud Hotline. I wanted to file a complaint against the Administrative Law Judge (ALJ) based on her behavior during the hearing. I was eventually connected to a male there who asked how could I be sure that the ALJ would rule against me. I told him because of her conduct during the hearing. He told me to wait until the ALJ issued her decision then file a complaint. I agreed. Obviously, I did not have to wait four and a half months to know what her decision would be.

November - December 2002 - I sent three letters to the Chief Administrative Law Judge (CALJ). The first concerned the ALJ's behavior during the hearing and a copy of this letter is not in my claim file. The other two letters - which deal mainly with my improper medical treatment - are in my file. Also not in my file is the letter I received from the Deputy CALJ telling me that the regular appeal procedures have a built-in complaint system." In other words, she told me that I could make the ALJ's behavior during the hearing the basis of further appeals. That's what I did.

May 2003 - the ALJ's behavior was the subject of my appeal to the Appeals Council (AC). However, the AC only considered two pages of the 54 pages of new evidence I sent them and they refused to review the ALJ's decision. Also, the seven-page handwritten statement I sent is not in the claim file. Additionally, my copy of this handwritten statement was in a bag that was stolen shortly after I sent my documents to the AC.

December 2003 - The ALJ's bias during the hearing and in her decision was the basis of my complaint in federal court 03-CV-9301. The complaint listed five points related to this:
1. The ALJ based her decision only on flawed medical evidence.

2. The ALJ improperly applied the Sequential Evaluation Process at Steps 3 and 5.

3. the ALJ did not consider the entire record in making her decision.

4. The ALJ failed to specify whey I wasn't credible.

5. The ALJ did not adduce the evidence at the hearing.

In February 2005, the magistrate judge's decision said that the ALJ did err in four of the five points I made and remanded the case to the commissioner.

May 2005 - The Appeals Council remanded my case to ALJ Bretthauer.

May 2005 - I filed an Unfair Hearing Complaint with the subject being "ALJ Bias." The SSA form I used is not in the file. I never received acknowledgment of this complaint from the SSA; I also never received the results of the investigation that the complaint instructions said I would receive. Additionally, a copy of this complaint never wound-up in my claim file, as it should have.

May 2006 - I do believe that someone actually did act on the Unfair Hearing Complaint, as I was assigned to a different ALJ for a hearing in May 2006; and the hearing was held in downtown Chicago. However, the ALJ for this hearing, Edwin Shinitzky, sent my case back to ALJ Bretthauer, the subject of my complaints.

*Exhibit X (1)*

June 2006 - I sent a letter to the Commissioner complaining about this and the ordering of CEs, which would further delay my case. I received a reply from the Associate Commissioner but she referred to my hearing in the past tense and did not specifically address the other issues I raised.

August 2006 - I sent a letter to the Regional CALJ raising the same issues - protesting my case being sent back to ALJ Bretthauer and the ordering of additional CEs. I received no reply.

September 2007, Sent a follow-up to the Unfair Hearing complaint to the Special Counsel. No response.

### Certification

As a party in the actions mentioned above, I, Louise Davenport, have firsthand knowledge of the events, documents and other events described herein and I can, therefore, attest, under penalty of perjury, that this is a true, accurate, and authentic account of each event and/or document described.

Signed: _Louise Davenport_

Louise Davenport
        This        Day of              2008

_Exhibit X (2)_

**PROPERTY INVENTORY - NO.**
**CHICAGO POLICE DEPARTMENT**
CPD-34.523 (REV. 6/03)

| DATE RECOVERED | INV NO | 11032118 | RD | HN489609 | RE-INVENTORY OF: | UNIT |
| --- | --- | --- | --- | --- | --- | --- |
| 26-JUL-2007 | | | | | | 001 |

| ITEM ID | QUANTITY | DESCRIPTION OF PROPERTY |
| --- | --- | --- |
| 2005738 | 1 | OTHER : 3 BAGS OF PERISHABLE FOOD STUFF THAT IS ROTTING |

COMMENTS: 3 bags containing perishable food stuff, that is spoiled and rotten, property disposed in trash container

IUCR: 1330
STATE CHARGES: 720 ILCS 5.021-5
CURRENCY:

CRIMINAL TRESPASS TO LAND

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

RECOVERED/SEIZED FROM - NAME    DAVENPORT, LOUISE
[x] ARRESTED

OWNER'S NAME
DAVENPORT, LOUISE

FOUND BY - NAME    WEYER, CHARLES    Star: 14097

INVESTIGATING OFFICER

[x] CHECK IF
C.P.D.
[ ] HOLD FOR INVESTIGATION
AND/OR EVIDENCE
[ ] DECEASED

STAR NO    UNIT    1st OFFICER'S NAME
WEYER CHARLES

ADDRESS    AT 500 S FRANKLIN ST
CHICAGO, IL

ADDRESS    500 S FRANKLIN ST
CHICAGO, IL

CHARGE TYPE    MISDEMEANOR
INCHOATE    OFFENSE AS CITED
BEAT OF RECOVERY    131

TELEPHONE NO.

TELEPHONE NO.

$ TOTAL CASH U.S.C.

VIA [x] POLICE MAIL [ ] E & RPS PICKUP
[ ] RECOVERING UNIT PERSONNEL
[ ] EVID /LAB TECHNICIAN
APPROVING DESK SERGEANT

INITIAL DESTINATION OF PROPERTY:
ERPS

[x] TO BE DISPOSED OF BY CUSTODIAN (NOT TO BE RETURNED)
(THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

[ ] PROPERTY-OWNER PICK-UP PLEASE
[ ] NOTICE OF INVENTORY RETURN POLICY

2nd OFFICER'S NAME
DOVGIN, JOHN

SIGNATURE
Electronic Approval

SIGNATURE
ERPS - ofic Approval

SIGNATURE
Electronic Approval

STAR NO
1953

STAR NO
17098

STAR NO
14097

UNIT
001

UNIT
001

DATE
26-JUL-2007

DATE
26-JUL-2007

TIME
18:45

COPY 4 - GIVE OR SEND TO FINDER, ARRESTEE OR OWNER

---

**INVENTORY NO**
11032118

**Notice of Inventory Return Policy**

Personal Property Inventoried as "Property Owner Pick-up" can be recovered at Evidence & Recovery Property, 1011 S. Homan Ave, Chicago, Illinois, 60624 with a copy of this inventory receipt and proper identification. If you are incarcerated, then you may recover personal property by sending this inventory receipt, a copy of your identification and your place of incarceration to Chicago Police Department, Evidence & Recovered Property, 1011 S. Homan Ave, Chicago, Illinois 60624. Pursuant to State Law, property which is evidence requires a court order for release. Personal property which is not claimed within 30 days will be considered abandoned and will trigger the statutory period for forfeiture under Illinois Law.

**NOTICE TO FINDER.** Lost or Abandoned Property will be treated in accordance with 765 ILCS 1030, which does not provide for a return of found property to the finder.

**ARRESTEE INFORMATION**

SEIZURE WITHOUT SEARCH WARRANT.
(ill Rev. Stat. Chap. 38, Sec. 103 ...

GIVE THIS COPY TO ARRESTEE

SEIZURE WITH SEARCH WARRANT
(ill Rev Stat Chap. 38 Sec 108-10)
(725 SCS 5/108-10)
ATTACH THIS COPY TO SEARCH
WARRANT

---

Exhibit Y(1)

## AFFIDAVIT OF ARREST AND "DISPOSAL" OF MY
## PERSONAL BELONGINGS BY CHICAGO POLICE ON JULY 26, 2007

Under oath, affiant states that...

1. On Thursday, July 26, 2007 at about 8am - approximately 14 hours after I went to the U.S. District Court Office at 219 South Dearborn, Chicago, IL, and successfully obtained a copy of the defendant's motion to dismiss my complaint in Mandamus - 07-cv-1888, I was arrested by the Chicago Police. This, after I and a number of other homeless persons took cover from storms under an overpass at 500 South Franklin .

2. At about 8 am, I was still sitting under the overpass, where I had apparently fallen asleep. At this time, officer 17098 (John Dovgin) came over to me and asked me, "What are you doing?" I told him "I'm just sitting here." He never told me to leave.

3. He then told me I was trespassing, and that I was going to be arrested. He came and stood in front of me while he smoked a cigarette; M.O. of my ID thieves. He then asked for ID.

4. When I questioned why I was being arrested and charged with trespassing, he pointed to the sign on one of the columns near where I had been sitting. It said "State Property. No Trespassing." I then told him that I always believed that the sign applied to the parking lot behind the columns. He said no, it did not. This was the only sign under the overpass regarding trespassing and it was in front of the entrance of the parking lot.

5. Before the paddy wagon arrived to take us to jail, Officer Dovgin told me to take everything out of my pockets. I complied.

6. Officer Dovgin was rushing me to put my hands behind my back, so I could be handcuffed, therefore, I did not return the money and Identification cards that I removed from my pockets. Instead of leaving these items on the elevated concrete where I was sitting, I quickly put them in a slot in one of my bags.

7. The paddy wagon arrived and I was ushered inside. My bags were left on the sidewalk.

8. I asked officer Bell before he closed the door of the paddy wagon about my bags. He said that Officer Dovgin was putting them in the trunk of the car and would be bringing them to the station. I was the only female in the compartment of the wagon. Why couldn't they have put the bags in there with me?

9. I did not see my bags once I arrived at the police station. I only had several items with me and they were inventoried and put in a sealed plastic bag.

10. I started to worry about my bags, and their contents. Most if not all of medical conditions (Hypertension, Congestive Heart Failure, Angina, Diabetes, Gallbladder disease, Diverticulitis, etc.) were caused by stress, mainly from this Identify theft. Therefore, it should not be surprising that stress aggravates them; it causes symptoms to arise when I'm otherwise stable.

11. Later, I again asked Officer Bell about my bags. He told me that the bags were being "inventoried" by the arresting officers when I still had not seen them at about 12 noon, just before I was taken to the hospital.

12. After I returned from a trip to the hospital at about 5:30 pm, I saw my bags on the floor. The large green one was open, and items had been removed.

13. Some of the items that were removed from my bags were sealed in two large plastic police property bags. I think most of my belongings were still in my bags.

14. At about 5:45 pm, Officer M. Bradfield said she was calling the arresting officer to inventory the bags. I told her I thought they had already been "inventoried."

15. Officer Bradfield would not let me remove the money and the Identification documents that were in the bags before they were taken.

16. Officer Bradfield called the same officer a second time and he returned this time with two cleaning people.

Exhibit Y(2)

63 of 66

17. My bags were then put in the trash container that this female and male rolled-in.

18. I started protesting, and the guy said this was the only way that he could transport the bags.

19. He pointed to the receipt that he inserted in the opened plastic police bag. He left.

20. I then looked at the receipt and saw what it said about disposing of the bags because they contained "rotting food".

21. I started protesting and Bradfield eventually went and found Sgt. Engstrom.

22. I showed Sgt. Engstrom the receipt and I told her about my bags. She said that the guy did the right thing. She then left.

23. I was transferred to the county jail on Saturday July 28, 2007, and I was told that my bags were being sent there as well. Later, I went there looking for the bags and was told they were not there.

24. Obviously, the only reason I was arrested was so that my ID thieves, Loop Mortgage Corp. could get the documents so that I couldn't use them in my answer to the defendant's motion to dismiss.

## 25. Some of the Contents of the bags

Identification cards: Library card, Clinic Card, Birth Certificate, Voter's Registration Card, Social Security Card, Approved ID, Phone #s, Staples & Kinko's Copy Cards, Others

Documents related to -
Ownership claims to property at 2565 W. Washington, 2 sets of copies and originals
07 -CV-1888 - Mandamus Complaint
06-2962 - appeal to custody of baby LBD
03-cv-9301 - first SSA case in federal court
Social Security Disability Claim related documents
Medical Records from Cook County/Stroger Hospital
2004 Complaint to IL Dept of Public Health (Mom)
Other documents related to mother
Miscellaneous documents

Clothes: Three pair of pants, five shirts, a pair of black shoes, socks, underwear

Stationery, unopened and recently purchased:
2 - 10 pack of ink pens (one blue, one multicolored)-Walgreen's
1 - 12 box of black ink pens from - Staples
3 boxes of 12 each No. 2 pencils - Staples
8 pocket folders with prongs - Walgreen's
150 pack of filler paper - Walgreens

AM/FM Cassette Player
New Testament audio cassettes - 12 in case
CD Player with three CDs

I, Louise Davenport, am the owner of the bags and their contents described herein can, therefore, attest, under penalty of perjury, that this is a true, accurate, and authentic account of the contents of the bags and the events that led to their being taken by the Chicago Police.

Signed: _Louise Davenport_    Date: _June 2, 2008_

Notary _____

"OFFICIAL SEAL"
WANDA GEANES
Notary Public, State of Illinois
My Commission Expires June 10, 2010

2

Exhibit V(3)

Special Counsel                         Louise Davenport
Office of Hearings and Appeals          General Delivery
5107 Leesburg Pike                       433 W. Harrison Street
Falls Church, VA 22041-3255             Chicago, IL 60699
                                                Email: louport35@aol.com

September 12, 2007

RE: ALJ and Unfair Hearing Complaint Procedures

Dear Special Counsel,

Excerpts from SSA Publication No. 05-10071,

**If you are still not satisfied**
If you think that we are not doing all that we have said we would do, please write to:

    Special Counsel
    Office of Hearings and Appeals
    5107 Leesburg Pike
    Falls Church VA 22041-3255

No, I'm not satisfied because you've done nothing you said you would do in the instructions.

Despite what is promised in SSA Publication No. 05-10071, none of these things were done in my case.

The Social Security Administration wants to treat fairly and equally all claimants and their representatives. We do not treat you differently because of your race, sex, age or disability, the amount of money you have, or any other reason. LOOKS GOOD ON PAPER!

**What you should do if you think you were treated unfairly**
If you think any ALJ treated you unfairly, you should tell us about it and ask us to look into it. You can ask at any time, even while we are deciding your claims for benefits. If you think the ALJ who will conduct your hearing is not fair, you can ask for another ALJ to hear your claim. REALLY? I DID THIS, AND I STILL GOT STUCK WITH HER!

First, we will let you know promptly that we received your complaint. Someone who has not been handling your claim before will look into the information you gave us in your complaint. After we do this, we will let you know the results.
If you are appealing your claim, the Appeals Council will look into your complaint as part of your appeal. The results of the review will be part of the decision on your appeal.

I WAS NEVER EVEN TOLD YOU RECEIVED MY COMPLAINT!

 I decided to write you because as I said in my Answer to the Defendant's Motion to Dismiss my complaint (07-cv-1888 NDIL), that since I was giving more attention to the case I filed in federal court, 03-cv-9301(NDIL), I did not follow-up on the Unfair Treatment Complaint I filed in ~~February 2004~~. The subject was ALJ Cynthia Bretthauer.
MAY 2005
    I followed the instructions and detailed what this ALJ did during the hearing in writing. Although this publication and the SSA's regulations say that my  complaint and it's

Exhibit Z (1)                                    65 of 66

allegations were supposed to have been included in my claim file, they were not. Although I presume that the "investigation" that was supposed to have been done based on my complaint, took place after my case in federal court was concluded - there was a new ALJ for a hearing in May 2006 - no one told me the results of that investigation, contrary to the information in the instructions for the unfair hearing complaint.

Further, the same allegations I made in my seven-page-handwritten -statement I sent to the AC in May 2003 regarding the conduct of the ALJ and how I thought it was connected to my ID theft are also not included in my claim file. Although most, if not all, of the 34 pages I sent as supporting documents to the AC did end up in the file. Coincidentally, a bag that contained my copy of the handwritten statement and all other documents related to my disability claim ,was stolen April 7, 2003, soon after I sent my appeal to the AC.

Additionally, two of the three letters I sent to the CALJ in December 2002 regarding the conduct of the ALJ during the hearing are in my file. However,  the first letter I sent, which detailed the biased I experienced during the hearing in October 2002, is not in the file.

Also, I called the SSA's 800 number shortly after the hearing in October 2002 and asked for the OIG. I thought the behavior of the ALJ was related to my ID theft, and I wanted to report it. However, I was told by the person (a male) whom I was connected to, to wait until the ALJ made her decision before filing a complaint. I agreed to do that. Well, I tried anyhow, but I wound up sending the letters to the CALJ. She in reply told me that there was a built-in complaint system in the appeal process - which is why the behavior of the ALJ was the subject of my subsequent appeals.

You probably can see where I'm going with this - all the attempts I made to complain about this ALJ are mysteriously and conveniently (for my ID thieves) absent from my claim file, even though according to SSA regulations and this publication, they should have been included. Coincidentally, the complaints about the Bogus CE with Dr. Scot Kale - upon which ALJ Bretthauer based most of her decision, is also absent from my file. This was also the subject of a complaint to the Illinois Department of Professional Regulations. Even though I sent copies of this complaint to the SSA's Regional Commissioner and the Deputy Director of the Illinois Department of Disability Determination Services, you can't tell by looking in my file that there was huge problem with this CE. None of my complaints wound-up in my claim file.

Additionally, I am enclosing a copy of a list of the documents I filed with my complaint for Mandamus 07-cv-1888. Additional information you may need or want may be found in some of these documents. If not, you can try contacting me by regular or email. Key word is TRY.

If you reply to this letter, could you please include a copy in my claim file. Not just for proof that I sent this letter, but because my ID thieves intercept my mail and they keep me from getting what they don't want me to have. This was the reason I did not receive the notices you sent prior to the May 2006 hearing. Just in case they do it in this case, I may one day find out what you said by viewing my claim file. Thank you.

Sincerely,
Louise Davenport

Enclosures                                    OMITTED

1. List of documents filed in 07-cv-1888
2. Reasons Why I believe ALJ Bretthauer Can't Be Fair to Me

Exhibit Z (2)